PEOPLE v. JORDAN

1. SEARCHES AND SEIZURES—SUPPRESSION OF EVIDENCE—PRETRIAL
MOTION—RAISING QUESTION.

Failure to make a timely pretrial motion to suppress the ad-
mission of a gun into evidence precludes defendant from rais-
ing a search and seizure issue for the first time at trial where
defendant knew the police possessed the weapon.

2. CRIMINAL LAW—EVIDENCE—LAYING FOUNDATION—NONADMITTED
EVIDENCE.

The mere laying of a foundation for admission of an exhibit
in evidence is not prejudicial error because the exhibit is not
subsequently offered.

3. CRIMINAL LAW—EVIDENCE—LAYING FOUNDATION—NONADMITTED
EVIDENCE.

Testimony of a robbery-murder victim's widow that she believed
that a gun, a proposed exhibit, was similar to her husband's
gun and that she thought the gun had been taken during the
robbery-murder did not prejudice the defendant, on trial for
the husband's murder, even though the gun was not offered
into evidence where, after the unsure identification, the pistol
was not shown to the jury again and there was testimony
connecting the defendant to the gun, because the defendant
was not prejudiced by the prosecutor's attempt to lay a founda-
tion for the gun's admission.

4. CRIMINAL LAW—IN-COURT IDENTIFICATION—WITNESSES—CREDI-
BILITY.

Permitting the complainant's in-court identification of the de-
fendant as one of the robbers was not error even though the

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence § 427.
[2, 3] 53 Am Jur, Trial § 34 et seq.
[4] 29 Am Jur 2d, Evidence §§ 371, 372.
[5] 5 Am Jur 2d, Arrest § 44 et seq.
[6] 29 Am Jur 2d, Evidence §§ 555, 556.

complainant was unable to identify the defendant at a police lineup and the preliminary examination where the defendant does not claim that there was an improper out-of-court confrontation and all the facts were brought out at trial, because questions as to weight and credibility are for the jury to determine under proper instruction.

5. ARREST—PROBABLE CAUSE—HOMICIDE—FIRST-DEGREE MURDER.

Probable cause existed for the police to arrest defendant where the arresting officer knew of a murder, of a store owner, received an anonymous telephone call describing the gun stolen from the victim and telling where the gun and the murderers were, and the two persons on the premises when the officer arrived matched the description of the murderers given by the victim's widow.

6. CRIMINAL LAW—RIGHT TO COUNSEL—WAIVER.

The defendant knowingly and voluntarily waived his right to have counsel present while giving a statement to the police where he was warned of his constitutional rights at the time of arrest, on the next day he was again given the warnings before being questioned by the police in the presence of counsel, and signed a waiver of his rights, and consulted with his lawyer, and on the third day he requested that his sister come to the police station because he was going to make a statement, his sister testified without contradiction that when asked whether the defendant wished the presence of counsel, he deferred the question to her, and she said she didn't see what good it would do.

Appeal from Macomb, Howard R. Carroll, J. Submitted Division 2 May 5, 1971, at Lansing. (Docket No. 9559.) Decided June 22, 1971. Leave to appeal denied, 386 Mich 776.

Ronald Jordan was convicted of first-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *George N. Parris,* Prosecuting Attorney, *Thaddeus F. Hamera,* Chief Appellate Lawyer, and *Don L. Milbourn,* Assistant Prosecuting Attorney, for the people.

*Max D. McCullough,* for defendant on appeal.

Before: McGregor, P. J., and Bronson and O'Hara,* JJ.

O'Hara, J. Defendant-appellant, Ronald Jordan, was convicted by a jury of first-degree murder committed during an armed robbery. MCLA § 750.316 (Stat Ann 1971 Cum Supp § 28.548). He was sentenced to life imprisonment. From his conviction he appeals of right.

On November 21, 1969, the defendant and a companion held up a small market in Roseville, Michigan, run by Hosmer and Iba Masters. During the holdup, Mr. Masters was fatally shot. In their haste to leave, the only item taken by the robbers was a .32-caliber automatic pistol belonging to the proprietors.

The week following the robbery, a Mrs. Shiros and a Mr. Buckley contacted the Roseville police and stated that they had seen people in other party stores matching the description of the two men who robbed the Masters' store. Detective Peters, who was placed in charged of the investigation, contacted other party store owners along Gratiot Avenue to determine if any of them had seen individuals matching the robbers' description.

On November 27, 1969, Sergeant Leske of the Detroit Police received an anonymous telephone call stating that the weapon taken from the Masters' store during the holdup was at a certain address. The next morning he went to the address and arrested Ronald Jordan for either the Roseville robbery and homicide or a Detroit murder. A search

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

of the premises incident to the arrest uncovered the gun being sought.

The afternoon of the same day, Sergeant Leske notified Detective Peters that he had a suspect in custody in connection with the Roseville robbery and that a lineup would be held. He took Mrs. Masters, Mrs. Shiros, and Mr. Buckley to the showup. Mrs. Masters could not identify the defendant, but the others identified him as being the man who was in other party stores along Gratiot Avenue near the time of the crime.

After the lineup, Detective Peters spoke to one Lee T. Ray who was apparently in custody because of his involvement with the defendant in a Detroit murder. Mr. Ray indicated that the murder weapon used in the Roseville killing belonged to a Charles White who lived in the same apartment building as the defendant. Police efforts to locate White the same evening were unsuccessful.

The next day the detective again went to Detroit Police Headquarters. There he spoke with White about getting the weapon. Mr. White cooperated and obtained the Beretta from its owner. White explained that he had held the gun as security for a loan he made to the owner, and that he, in turn, had loaned it to the defendant. This gun was clearly established as the murder weapon.

On November 30, Detective Mikus of the Detroit force called Detective Peters and informed him that defendant wanted to make a statement. Detective Peters went downtown and obtained the defendant's confession on a cassette tape recorder. The defendant later refused to sign this confession. Trial and conviction followed.

As his first assignment of error, defendant claims that the trial court erred reversibly by denying plaintiff's motion for a mistrial when the prosecutor

decided to forego introducing a .32-caliber pistol which had been identified by the victim's wife preparatory to moving its admission into evidence.

Certain facts regarding the .32-caliber revolver were established by the prosecutor. Mrs. Masters, widow of the decedent, testified that during the robbery in which her husband had been killed, a .32-caliber weapon was apparently taken from the store. Thereafter, the prosecutor made an offer of proof out of the presence of the jury. He indicated that he desired to lay a foundation for the eventual introduction of the gun into evidence once officers had testified as to its chain of custody. An immediate objection was entered to the proposed exhibit by defendant's counsel on the ground of illegal search and seizure.

Defendant's objection was not well taken. He had not made any pretrial motion to suppress admission of the gun as evidence even though his own testimony at the *Walker* hearing[1] establishes that both he and his counsel knew the police were in possession of the weapon. In the absence of a pretrial motion to suppress evidence allegedly seized illegally, the search and seizure issue cannot be considered initially at trial. *People* v. *Ferguson* (1965), 376 Mich 90; *People* v. *Smith* (1969), 19 Mich App 359. Therefore, the weapon was competent evidence and the trial court need not have considered what was purportedly an illegal seizure by the police.

Mrs. Masters was then recalled. She testified that the people's proposed Exhibit #12, a .32-caliber pistol, was similar to her husband's gun and further indicated that she believed that it was his revolver. This identification was not positive. The

---

[1] *People* v. *Walker* (on Rehearing, 1965), 374 Mich 331.

pistol was thereupon taken out of the jury's view and never shown in court again. Thus, the sum total of evidence before the jury on this issue was the widow's testimony that the decedent's gun had disappeared during the robbery and her identification of a .32-caliber pistol as the one she believed belonged to her husband. At no point was there any testimony connecting the gun with defendant.

No error arises solely because the prosecutor subsequently decided that he would not offer the proposed exhibit.[2] The mere laying of a foundation for admission of evidence is not prejudicial error because the exhibit is not subsequently offered. *Schmidtberger* v. *United States* (CA 8, 1942) 129 F2d 390.

Under the facts herein, the defendant has failed to show how the in-court identification of the gun prejudiced him in any way, and he was not thereby entitled to have a mistrial declared. *People* v. *Miller* (1970), 28 Mich App 161.

Next, it is asserted that the trial court committed reversible error by allowing the decedent's widow to identify the defendant in court as one of the robbers when she had been unable to identify him at a previous lineup and the preliminary examination.

Defendant concedes that there was no improper or tainted out-of-court confrontation between himself and Mrs. Masters in contravention of *United States* v. *Wade* (1967), 388 US 218 (87 S Ct 1926, 18 L Ed 2d 1149). Furthermore, testimony at the *Walker* hearing establishes that on the date of his arrest the defendant was taken before a Recorder's Court judge and an attorney was appointed to represent him. Later the same day the Detroit

---

2 Examination of the proceedings below does not indicate the presence of any *mala fides* on the part of the prosecutor relating to the proposed exhibit.

Police Department held a lineup at which defendant's assigned counsel was present. At neither this lineup nor at the subsequent preliminary examination was Mrs. Masters able to make a positive identification. All of this information was brought out at the trial.

Questions as to the weight and credibility of any testimony are within the province of the jury under proper instruction, as in the instant case. *People* v. *Hancock* (1950), 326 Mich 471. No reversible error attached.

For the sake of convenience, we have combined the following assignments of error:

1) Whether defendant's confession was a direct product of an illegal arrest and therefore improperly admitted in evidence at the trial.

2) Whether the confession of defendant was inadmissible both because of the absence of counsel at the time of the confession and further on account of promises that he allegedly would be charged with the lesser offense of second-degree murder. We will discuss them collectively.

As noted before, the Detroit police received a telephone tip from an unknown caller to the effect that defendant had in his possession a .32-caliber Mauser pistol, taken in the Roseville holdup, and that defendant was displaying the weapon and bragging about the murder. The next morning, Officer Leske went to the address mentioned by the caller and gained admittance after knocking on the door and identifying himself. Once inside, the officer observed two individuals matching the description of the murderers and he promptly took them into custody.

At the time of the arrest, the officer was possessed of the following knowledge: the fact of the murder, the telephone tip describing the stolen gun and also

stating the whereabouts of the gun and the murderers, and the presence of two persons on the premises whose description tallied with that given by the victim's widow. The foregoing facts constitute probable cause to take defendant into custody for the Roseville murder.[3] See *People* v. *Wilson* (1967), 8 Mich App 651.

Although defendant was certainly aware that the police had searched the immediate premises incident to the arrest and had uncovered the gun, neither at the *Walker* hearing nor at the trial did he contend that the confession was the product of an unlawful arrest or the purported search and seizure. His belated attempt to raise the issue for the first time on appeal has not preserved it for review. *People* v. *Ray Clifton Smith* (1969), 20 Mich App 243.

Having been lawfully arrested by the Detroit police on November 28, 1969, and charged with first-degree murder, defendant was promptly given his *Miranda* warnings.[4] The following day, November 29, the defendant was questioned by Detroit police in the presence of his counsel. Once again, he was tendered the appropriate notice and signed the waiver of his constitutional rights in regard to any statement that he might make. At this time, the defendant was accorded the opportunity to consult with his counsel and, in fact, did meet with Mr. O'Connell.

On November 30, defendant requested that his sister, Mrs. Joan Sanders, come to the police department because he was going to make a statement.

---

[3] We are unable to discern precisely what crime the defendant was arrested for. The arresting officer subsequently testified that in his own mind he was taking the accused into custody for the Roseville murder, but defendant was charged with a first-degree murder perpetrated in Detroit and counsel was appointed in consequence thereof.

[4] *Miranda* v. *Arizona* (1966), 384 US 436 (86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974).

Defendant's sister subsequently testified that, in her presence, the detective asked the defendant if he wanted his attorney present. When defendant referred the question to her, she stated that, "I said that I didn't see what good it would do". Thus, the sister of the accused testified in open court that he had waived the right to counsel prior to being interviewed by the Detroit police. Nor did defendant contradict his sister's testimony at the *Walker* hearing.

When defendant indicated that he desired to make a statement, Detective Peters from the Roseville Police Department was informed of the prisoner's wish. The detective recorded his entire conversation with defendant and specifically informed him that if the services of an attorney were desired that one would be obtained.

As against allegations that the confession was involuntary because of promises impliedly made that if he pled guilty to the Roseville crime that the police would attempt to have him charged only with second-degree murder and would drop other charges pending against the defendant, we consider the overwhelming evidence in the record to the contrary.

According to the record, defendant was facing a great many other charges stemming from various robberies in Detroit in addition to the murder charge already pending there. His sister indicated that the defendant initiated inquiries about the possibility of a plea to second degree murder. She also stated that Sergeant Mikus had frankly informed them that a life sentence could be meted out for armed robbery as well as for first- or second-degree murder. With admirable candor, Mrs. Sanders further admitted that the sergeant stated that he had no control over the Roseville Police Department and that he could not make any promises about the

Roseville case. It was only after the defendant had completed his confession that the possibility of a second-degree murder plea was broached to Detective Peters of the Roseville police. His response thereto was simply to indicate that the matter would have to be discussed with the prosecuting attorney.

At the *Walker* hearing the trial judge determined that the confession had not been involuntary or otherwise induced by illicit promises. While we review the record and make our own independent determination of voluntariness, we accord considerable weight to the determination of the trial judge where credibility of witnesses is involved, as in the instant case. *People* v. *Hummel* (1969), 19 Mich App 266.

For the reasons hereinbefore detailed, we conclude that the defendant knowingly and intelligently waived his right to have counsel present when he confessed, and that the finding of the *Walker* hearing that no proscribed inducements were expressly or impliedly made is amply supported in the record.

Lastly, defendant alleges that insufficient evidence was adduced at the trial to support a finding of guilty beyond a reasonable doubt.

The latter contention is so patently lacking in merit that nothing further need be said with regard to this matter.

Affirmed.

All concurred.