## PEOPLE *v* PATTERSON

### OPINION OF THE COURT

1. HOMICIDE—SECOND-DEGREE MURDER—EVIDENCE—SUFFICIENCY.
   Evidence was sufficient to support a second-degree murder charge where there was testimony which placed the defendant at the scene of the killing, linked him to a switchblade knife, and disclosed that the deceased was chased by knife-wielding youths and stabbed to death.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 40 Am Jur 2d, Homicide § 431 *et seq.*
[2] 40 Am Jur 2d, Homicide § 530.
[3] 21 Am Jur 2d, Criminal Law §§ 316, 317.
[4] 21 Am Jur 2d, Criminal Law § 443.
[5] 21 Am Jur 2d, Criminal Law § 314.
[6] 21 Am Jur 2d, Criminal Law § 309 *et seq.*

2. CRIMINAL LAW—INCLUDED OFFENSES—INSTRUCTIONS TO JURY.

Failure of the trial judge, in prosecution for second-degree murder, to instruct the jury on the lesser included offenses of assault was proper where there was no evidence upon which the jury could properly find only an assault.

3. CRIMINAL LAW—RIGHT TO COUNSEL—WAIVER.

The police may obtain a waiver of a defendant's right to counsel in the absence of the defendant's attorney.

4. CRIMINAL LAW—PRELIMINARY EXAMINATION.

All that is needed to bind a defendant over for trial is the examining magistrate's finding that the crime charged was committed and that there was probable cause to believe that the defendant committed that crime.

DISSENT BY LEVIN, P. J.

5. CRIMINAL LAW — CONFESSION — ABSENCE OF COUNSEL — ADMISSIBILITY.

*A confessional statement obtained from a defendant by the police without defendant's counsel present during the interrogation is inadmissible, because it is impermissible for the police, who in their continuing investigation of the crime were acting for the prosecutor, to interrogate defendant without the consent of his lawyer, who the police knew was representing defendant at the time.*

6. CRIMINAL LAW—PROSECUTORS—COMMUNICATION WITH DEFENDANT —CONSENT OF COUNSEL.

*A prosecuting attorney may not permit police officers or detectives to obtain statements from a defendant in the absence of defendant's counsel when it is known that the defendant is represented by counsel, because the prosecutor is held responsible for the investigatory activities of the police, at least in those cases that have reached his office, and because a lawyer is prohibited from communicating upon the subject of the controversy with a party represented by a lawyer without the consent of that lawyer, unless authorized by law to do so.*

Appeal from Recorder's Court of Detroit, Robert L. Evans, J. Submitted Division 1 October 11, 1971, at Detroit. (Docket No. 9457.) Decided March 27, 1972. Leave to appeal denied, 387 Mich 795.

Lawrence P. Patterson was convicted of manslaughter. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Luvenia D. Dockett,* Assistant Prosecuting Attorney, for the people.

*George Stone,* for defendant on appeal.

Before: LEVIN, P. J., and R. B. BURNS and J. H. GILLIS, JJ.

J. H. GILLIS, J. Defendant was tried in the Recorder's Court for the City of Detroit by a jury on the charge of second-degree murder, MCLA 750-.317 (Stat Ann 1954 Rev § 28.549) and found guilty of manslaughter, MCLA § 750.321 (Stat Ann 1954 Rev § 28.553). He was sentenced to a term of 6 to 15 years in the state prison. He appeals as of right. We affirm.

Defendant raises six issues on appeal. Two of these concern the sufficiency of the evidence. A review of the record shows that at the close of the people's case there was sufficient evidence to support the charge of second-degree murder. There was testimony which placed the defendant at the scene of the killing and testimony which linked him to a switchblade knife. It was established that the deceased, Henry "Doc" Savage, was stabbed three times, resulting in his death. Additional testimony disclosed that the deceased was chased by knife-wielding youths. From such evidence the requisite element of malice could be inferred. *People* v *Hansen* (1962), 368 Mich 344, 350; *People* v *McKeller*

(1971), 30 Mich App 135. Furthermore, from this same evidence the jury could find beyond a reasonable doubt defendant guilty of manslaughter. Although evidence of self-defense and justification was introduced, it is for the jury to determine the facts. *People* v *Moore* (1943), 306 Mich 29; *People* v *Mc-Keller, supra.*

Defendant also raises on appeal two issues pertaining to the court's charge to the jury. These instructions were not objected to below and thus the issues were not properly presented for review. *People* v *Turner* (1971), 31 Mich App 44. We note, however, that the instruction on reasonable doubt was consistent with the charge approved in *People* v *Powers* (1918), 203 Mich 40. Defendant's request that the lesser included offenses of assault be included in the charge was not supported by the evidence at trial. There being no evidence upon which the jury could properly find only an assault, it was not error for the trial court to refuse such request. *People* v *Hearn* (1958), 354 Mich 468; *People* v *Stevens* (1968), 9 Mich App 531.

Also cited as error by the defendant was the admission into evidence of his confession. The record reveals that on two occasions the defendant presented himself to the police in the company of Sanford Rosenthal, an attorney who was at this time representing another defendant who was charged with the murder of "Doc" Savage. Although there is some question as to whether or not Mr. Rosenthal was in a position to, or did, represent the defendant, the police were aware of his apparent interest in having the defendant talk to the officers in charge of the Savage case. These officers not being available on either of these two occasions, the defendant did not give himself up to their custody.

Subsequently, the defendant turned himself in to the police unaccompanied by Mr. Rosenthal. Defendant's confession thereafter followed an extensive instruction concerning his constitutional rights, including his right to have counsel present. Defendant was specifically asked if he wanted Mr. Rosenthal present. Defendant signed a waiver of his rights and at no time during his interrogation made a request for his attorney. At two hearings below the trial court concluded that the defendant's confession was understandingly and voluntarily made. We cannot agree that this finding was clearly erroneous on the present facts. *People* v *Werner* (1970), 26 Mich App 109.

The defendant argues, however, that it was impermissible for the police to take a waiver of the defendant's right to counsel in the absence of Mr. Rosenthal. Recently this Court held admissible a statement taken under similar facts in *People* v *Jordan* (1971), 34 Mich App 360. We cannot agree with the defendant's contention and we find no error.

Defendant also appeals from the findings of the preliminary examination, contending that there was not sufficient proof to bind defendant over on the charge of second-degree murder and that the use of defendant's confession at the examination was improper. *People* v *White* (1936), 276 Mich 29. However, the examining magistrate was himself careful to view the evidence submitted at the examination without reference to the confession. He was still able to find that the crime charged was committed and that there was probable cause to believe that the defendant committed that crime. This is all that is needed to bind the defendant over for trial. *People* v *Dellabonda* (1933), 265 Mich 486; *People* v *Medley* (1954), 339 Mich 486; *People* v *Jackson* (1967),

8 Mich App 643; *People v Asta* (1953), 337 Mich 590.

Affirmed.

R. B. Burns, J., concurred.

Levin, P. J. (*dissenting*). The police obtained a confessional statement from the defendant, Lawrence P. Patterson, which was admitted in evidence at his trial. The statement was voluntarily given after the *Miranda*[1] warnings were read. However, at the time the statement was given, Patterson was represented by a lawyer who was not present during the interrogation. In my opinion, it was impermissible for the police, who in their continuing investigation of the crime were acting for the prosecutor, to interrogate Patterson without the consent of his lawyer. The statement should not have been admitted in evidence.

In *Massiah v United States,* 377 US 201, 206; 84 S Ct 1199, 1203; 12 L Ed 246, 250 (1964), the United States Supreme Court held that Massiah was denied his Sixth Amendment right to the assistance of counsel "when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel." Massiah made the incriminating statement during a conversation in an automobile with another person who was under investigation and who, without Massiah's knowledge, had decided to cooperate with government agents. The automobile was owned by the other person and he had allowed the government agents to install a radio transmitter in the automobile. The government agents heard the conversation by means of that electronic device.

---

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

Since the incriminating statement in *Massiah* was obtained surreptitiously, the *Massiah* Court had no occasion to consider whether a defendant who is represented by counsel may, without the advice of counsel, waive his right to have counsel present during an interrogation by the police. Some courts take the view that *Massiah* lays down a broad constitutional doctrine requiring the presence of a defendant's lawyer before any further interrogation, so that the defendant cannot be asked or permitted to decide whether he wishes to waive the benefit of counsel without his lawyer's advice.[2] Other courts take the view that a defendant may waive the presence of his lawyer without the benefit of the lawyer's advice and counsel.[3]

I see no need to decide this case in constitutional terms. The Canons of Professional Ethics prohibit a lawyer from communicating upon the subject of the controversy with a party represented by a lawyer without the consent of that lawyer. Old Canon 9 provided:

"A lawyer should not in any way communicate upon the subject of controversy with a party represented by counsel; much less should he undertake to negotiate or compromise the matter with him, but should deal only with his counsel."

---

[2] See *People v Vella*, 21 NY2d 249; 234 NE2d 422 (1967); but see *People v Robles*, 27 NY2d 155; 263 NE2d 304 (1970); *People v Isby*, 267 Cal App 2d 484; 73 Cal Rptr 294, 302 (1968); *State v Witt*, 422 SW2d 304, 309 (Mo, 1967); *cf. Commonwealth v McCarthy*, 348 Mass 7; 200 NE2d 264, 266 (1964).

See, also, *Ricks v United States*, 118 US App DC 216; 334 F2d 964, 971 (1964), and *Lee v United States*, 322 F2d 770 (CA 5, 1963), concerning defendants not represented by counsel.

[3] See *Commonwealth v Hoss*, 445 Pa 98; 283 A2d 58, 65 (1971); *State v Melton*, 207 Kan 700; 486 P2d 1361, 1368 (1971); *Colebrook v State*, 205 So 2d 675 (Fla App, 1968); *United States v Cassell*, 440 F2d 569, 571 (CA 7, 1971); *Wilson v United States*, 398 F2d 331 (CA 5, 1968).

This was interpreted in Opinion 41 of the Committee on Professional and Judicial Ethics of the State Bar of Michigan to mean:

"It is improper for a lawyer to interview an adverse party with respect to the facts of the case, *without consent of his counsel,* despite the fact that such party will be a witness at the trial." (Emphasis supplied.)[4]

The prohibition against communication with an adverse party without the prior consent of the lawyer representing that party is stated in so many words in new Disciplinary Rule 7–104, which provides that a lawyer may not "communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter *unless he has the prior consent of the lawyer* representing such other party or is authorized by law to do so". (Emphasis supplied.)[5]

The canons, both the old and the new, and the new disciplinary rules have been adopted by the Supreme

---

[4] Opinion 41, Opinions of the Committee on Professional and Judicial Ethics, 38 Mich State Bar Journal, May, 1959, p 60. Similarly, see Opinion 108, American Bar Association, Canons of Professional and Judicial Ethics, Opinions of Committee on Professional Ethics and Grievances, p 230 (1947); ABA Opinion 187, p 370; Opinion 202, Committee on Professional and Judicial Ethics of the Michigan State Bar, cited at fn 10, *infra,* and discussed in accompanying text and in fn 11.

[5] DR 7–104, 385 Mich lxiii.

The committee notes accompanying the new disciplinary rule do not elucidate as to the kind of situation the committee had in mind when it provided an exception for communications with an adverse party when "authorized by law to do so". Perhaps the situation described in the following paragraph was in mind: "Where an insured is represented by counsel for an insurance company who, because of his desire to protect the company, will not advise the insured of all his rights and risks, it may be the right and duty of counsel for the injured party so to advise the insured, after warning such counsel". Drinker, *Legal Ethics* (Columbia Univ Press ed 1953), ch VII, p 203.

Be that as it may, the law has not provided the prosecutor or his minions with a blanket exception. See fns 10 and 11, *infra;* but see, also, fn 14.

Court of the State of Michigan,[6] and have the force of law.

The prohibition against *indirect* communication with an adverse party—spelled out in the new disciplinary rule in the following language: "cause another to communicate on the subject of the representation"—is not a new development. In Opinion 95 of the American Bar Association Committee on Professional Ethics and Grievances it was ruled that:

"For the law officer of a municipality to permit police officers or detectives to obtain written statements of claimants after such claims for injuries have been put in the hands of an attorney for attention, of which fact the law officer has knowledge, is a violation of Canon 9."

The committee reasoned that "it is encumbent upon a lawyer not to attempt clandestinely to practice coercion on a party who is represented by counsel. Whatever may be the explanation, it is well known that claims for injuries against municipalities are many times brought by poor, ignorant, and even illiterate persons. The fact of having police officers or detectives interview persons of this type is to put them at a serious disadvantage. Who can say that the same result would not obtain if the client were intelligent and educated. Even the intelligent and educated layman knows but little of legal procedure. The presence of policemen or detectives, in such a role, rather connotes, to the average layman, the investigation of a criminal matter. Obviously such practice is reprehensible."

The committee's ruling continued:

---

[6] See, for old canons, 273 Mich xlii; 38 Mich State Bar Journal, May, 1959, p 12; and, for the new canons and disciplinary rules, 385 Mich xxxix.

"The law officer is, of course, responsible for the acts of those in his department who are under his supervision and control. *Opinion 85. In re Robinson,* 136 NYS 548 (*aff'd* 209 NY 354 [1912]) held that it was a matter of disbarment for an attorney to adopt a general course of approving the unethical conduct of employees of his client, even though he did not actively participate therein.

"It would be unavailing to contend that the police officers or detectives are not under the supervision and control of the law officer, but rather are under the supervision and control of the municipality. 'The attorney should not advise or sanction acts by his client which he himself should not do.' *Opinion 75. Canon 16* also sets forth that if a client persists in improprieties contrary to the advice of his attorney, the lawyer should terminate the relationship. *Opinion 44. People ex rel Colorado Bar Association* v *White,* 89 Colo 306, 1 P2d 577.

"Furthermore, the duty of an attorney is not confined solely to his client. He has some obligations respecting the court and his brethren at the Bar. *Canon 22,* among other things, deals with candor and fairness to other lawyers. Such conduct on the part of the law officer of the municipality is not, we think, dealing with a brother lawyer with candor and fairness."[7]

The authority of Opinion 95 was recently reaffirmed when the American Bar Association Special Committee on Evaluation of Ethical Standards cited it as the principal precedent in support of new Disciplinary Rule 1–102, which provides as follows:

"Misconduct.
"(A) A lawyer shall not:  *  *  *

---

[7] Opinion 95, American Bar Association, Canons of Professional and Judicial Ethics, Opinions of Committee on Professional Ethics and Grievances, pp 207, 208 (1947). Similarly, see ABA Opinion 79, p 179; ABA Opinion 249, noted in Drinker, *Legal Ethics, op cit* Appendix A, p 296.

"(2) Circumvent a Disciplinary Rule through actions of another."

DR 1–102, like the other disciplinary rules, was adopted by our Supreme Court.[8]

No person may legitimately do through others what he is prohibited from doing himself. Unless a prosecutor is accountable for what his investigators do—without regard to whether he is aware of precisely what they are doing at a particular time—prosecutors will be encouraged to leave investigations of crime to the unsupervised control of the police, and the rule prohibiting communication with an adverse party will, as to criminal prosecutions, become a form of empty words.[9] The prosecutor must be held responsible for the investigatory activity of the police, at least such activity taking place after the case has reached his office.

The prosecutors of this state have been alerted to the fact that Canon 9 is binding on them. On April 5, 1965 the Committee on Professional and Judicial Ethics of the Michigan State Bar issued its Opinion 202, stating that, "It is unethical and improper for a prosecuting *authority* to interview a defendant in a criminal case without the knowledge and consent of his attorney of record". (Emphasis supplied.)[10] In rendering Opinion 202 the committee expressly dealt with a factual situation where, as here, the defendant requests an interview with the prosecuting authority.

The committee's choice of words was not accidental. By using the term "prosecuting authority" the committee made clear that the prohibition

---

[8] 385 Mich xxxix.

[9] See discussion in Broeder, *Wong Sun v United States: A Study in Faith and Hope,* 42 Neb L Rev 483, 601 (1962–1963).

[10] 46 Mich State Bar Journal, May, 1967, pp 29–30.

against interviewing an accused person who is represented by counsel is not to be read in a narrow sense.

Before issuing Opinion 202 the committee solicited the views of the Prosecuting Attorneys of Wayne, Oakland, and Macomb Counties and of the Attorney General of the State of Michigan and of the United States Attorney for the Eastern District of Michigan, and received no response except from the United States Attorney. The committee said, "We perforce conclude that they have nothing to offer by way of justification for the practice under discussion".[11]

The police practice of questioning an accused person without first obtaining the consent of his lawyer is so notorious that the prosecutors of this state must be aware of it. A prosecutor who fails to put a stop to this unlawful practice must be deemed to have authorized it. Surely, if a law firm representing a business concern became aware that the concern's investigators were interviewing adversary parties who were represented by counsel without first obtaining counsel's consent, it would not, if it failed to insist that its client's investigators

---

[11] The practice referred to is described in Opinion 202 as follows:
"The general counsel of the State Bar of Michigan inquires of the Committee concerning the ethical propriety of the interviewing of a defendant in a criminal case by a prosecuting authority without knowledge of his attorney. He notes that such usually arises in instances when a defendant himself has requested a private interview with the prosecutor without the knowledge or approval of his own counsel.

"The general counsel adds his understanding that prosecuting authorities claim justification for granting such interviews without advising the defendant's attorney, upon the ground that the interview has been so requested by the defendant". 46 Mich State Bar Journal, May, 1967, pp 29–30.

It appears on this record that, despite the issuance of Opinion 202, the Wayne County Prosecutor does not recognize an obligation to observe Canon 9. Patterson gave two confessional statements, an informal statement to the police, and shortly thereafter a formal statement to the prosecutor. Thus, in this case, the prosecutor himself, as well as the police, violated the canon.

desist from such activity, be heard to claim its
benign neglect as a defense.  On the same principle,
prosecutors should not be heard so to stultify them-
selves.  In the language of DR 1–102, a lawyer may
not "circumvent a disciplinary rule through actions
of another".

In this case the victim was stabbed on November
17, 1968.  Gary Holleran was promptly arrested and
a warrant charging him with murder was authorized
by the prosecutor and issued.  The matter was, thus,
already in the hands of the prosecutor when, in
mid-December, 1968, the defendant Patterson en-
tered the picture.  Clearly, in their continuing inves-
tigation and interrogation of witnesses, the detec-
tives assigned to this case were working for and
were subject to the supervision of the prosecutor.

The record is also clear that the defendant Patter-
son was represented by a lawyer when he was inter-
rogated, and that his lawyer had not consented to
the police interviewing Patterson without the lawyer
being present.  Mr. Sanford Rosenthal, who previ-
ously had undertaken to represent Gary Holleran,
testified that his arrangement with Patterson was
that he, Rosenthal, would represent Patterson unless
and until a warrant issued against him and, if a
warrant were to issue, then he could no longer
represent him.[12]  Mr. Rosenthal said that the police
were aware that he was representing Patterson.  He
also said that he was surprised when he learned that
Patterson had been interrogated by the police, and
that he expected to be present during any such in-
terrogation.  From this testimony it must be in-
ferred that Mr. Rosenthal did not consent to the
police interrogation of Patterson; it is not claimed
that he did consent.

---

[12] A warrant against Patterson was not authorized until after he
was interrogated by the police.

Lieutenant Hershall Bostick, a supervisory police officer in the Homicide Bureau, testified that it was his impression that Mr. Rosenthal was representing Patterson. Detective John Maniaci, who worked under Lieutenant Bostick's supervision, testified that he received a note from Lieutenant Bostick stating that Mr. Rosenthal had come in with Patterson and desired to speak to Detective Maniaci. Detective Maniaci was out and Mr. Rosenthal and Patterson left; subsequently Patterson returned on his own initiative and his interrogation by the police took place at that time. Detective Maniaci said that Patterson was under arrest when he was questioned, and that before any other questions were put to him Patterson was asked "if he wanted his attorney present, if he wanted Mr. Rosenthal" and he responded that he did not. Indisputably, Patterson was represented by counsel and the police—the prosecutor's investigators—knew that he was represented by counsel before they questioned him.

I have found no judicial opinion where a confessional statement obtained in violation of Canon 9 has been suppressed.[13] However, I did find that I

_____

[13] See, however, *Wilson* v *United States*, 398 F2d 331, 333 (CA 5, 1968), where the United States Court of Appeals for the Fifth Circuit expressed its approval of Judge Hamley's dissenting opinion in *Coughlan* v *United States*, 391 F2d 371 (CA 9, 1968), discussed in the accompanying text, *infra*, but did not act on that view of the matter because, "Under the facts and circumstances of this case we find no reversible error". See, also, *United States* v *Four Star*, 428 F2d 1406 (CA 9, 1970).

In *Schantz* v *Eyman*, 418 F2d 11 (CA 9, 1969), a Federal *habeas corpus* proceeding to review a state court conviction, the prosecutor had sent a psychiatrist to see the defendant who was represented by a lawyer, without the lawyer's consent. The defendant had refused to see the psychiatrist. The United States Court of Appeals for the Ninth Circuit affirmed a district court order granting the writ because of the prosecutor's infringement of the defendant's Sixth Amendment right to counsel at all critical stages and the prejudice done the defendant's case when his refusal to cooperate was made known to the jury. In so holding the Court relied on Judge Hamley's opinion in *Coughlan*.

am not alone in my view of what the rule should be. Chief Judge Fuld of the New York Court of Appeals, in dissent, recently wrote as follows:

"In my view, too, law enforcement officials must desist from questioning a person in custody once they learn that he is represented by an attorney unless both he and his lawyer affirmatively waive his right to counsel. Were we dealing with a civil case, no matter how trivial, it would be unthinkable for the lawyer for one party to speak to the other party in the absence of the latter's attorney. Indeed, our canons of ethics explicitly condemn and forbid such conduct (American Bar Assn. Code of Professional Responsibility, Canon 7, Disciplinary Rules 7–104, [A],[1]). Certainly, no less is to be expected or demanded when defendants in criminal cases are involved." *People v Robles*, 27 NY2d 155, 162; 263 NE2d 304, 307 (1970).

Judge Hamley of the United States Court of Appeals for the Ninth Circuit, also in dissent, wrote as follows:

"Canon 9 of the Canons of Professional Ethics, quoted in the margin, provides that a lawyer should not communicate with a party represented by counsel. While this canon does not purport to govern the conduct of non-lawyers, such as the interrogating officers in this case, it does place a responsibility upon prosecuting lawyers not to sanction, or take

---

In *Mathies v United States*, 126 US App DC 98, 102, 103; 374 F2d 312, 316, 317 (1967), Chief Justice (then Judge) Burger, writing for the United States Court of Appeals for the District of Columbia Circuit, cited Canon 9 in criticizing the police for interviewing a defendant in the absence of his lawyer but affirmed the conviction because the Court concluded that the evidence obtained was cumulative. Chief Justice Burger wrote, "We assume that the episode will not arise again in the future", and, "we see no need to order a new trial merely to press home our firm *conclusion* that appellant's counsel should have been given an opportunity to be present at the interview". (Emphasis supplied.) See also fn 14, *infra*.

advantage of, statements obtained by Government agents from a person represented by counsel, in the absence of such counsel." *Coughlan* v *United States,* 391 F2d 371, 376 (CA 9, 1968).

Judges Fuld and Hamley expressed their opinions in the context of a factual situation paralleling the facts of the present case in the sense that the interrogations were by detectives, not a prosecutor, and the defendant willingly gave the confessional statement without prodding or undue influence.[14]

Patterson's confessional statement did not exist before the police interrogated him in the absence of his lawyer. While a violation of Canon 9 has not yet been held to be of constitutional dimension, the only effective remedy for a violation of the canon is to deny the prosecuting authority the benefit of the illegally-produced evidence. Patterson has no meaningful remedy at law or before the State Bar. The only remedy is suppression.

Mr. Justice Swainson recently had occasion to point out that the exclusionary rule has been applied in cases where rights of accused persons other than their constitutional rights had been violated. He said that "for excesses of police conduct" a court may justifiably exclude evidence.[15] Similarly, see *Williamson* v *United States,* 311 F2d 441 (CA 5, 1962), where evidence gathered by a government informer who was paid a contingent fee was suppressed.

---

[14] The Supreme Court of Washington has flatly held, contrary to Mich State Bar Opinion 202 (see fns 10 and 11 and accompanying text) and the view expressed in this opinion, that Canon 9 is binding only in civil cases and was not meant to apply in criminal prosecutions. *State* v *Nicholson,* 77 Wash 2d 415; 463 P2d 633, 636 (1969). The double standard rides again.

[15] See *People* v *Sinclair,* 387 Mich 91 (1972).