PEOPLE v DANIELS

1. ARREST—PROBABLE CAUSE—SUFFICIENT FACTS—REASONABLE BELIEF
   —CRIMINAL LAW.

   Probable cause to make a valid arrest exists if, at the time of the
   arrest, the facts and circumstances within the knowledge of the
   arresting officer and of which he has reasonably trustworthy
   information are sufficient to warrant a prudent man in believ-
   ing that the defendant has committed or is committing an
   offense.

2. ARREST—PROBABLE CAUSE—INFORMANTS—BASIS FOR INFORMATION
   —CRIMINAL LAW.

   Information given to a police officer by an informant may support
   a finding of probable cause to arrest a suspect if the officer has
   a basis for finding the informant to be reliable and the officer is
   informed of some of the underlying circumstances from which
   the informant drew his conclusion.

3. ARREST—STOPS—REASONABLE CONCLUSIONS—CRIMINAL LAW.

   A police officer may lawfully stop a person if the officer has
   observed unusual conduct which leads him reasonably to con-
   clude in light of his experience that criminal activity may be
   afoot.

4. SEARCHES AND SEIZURES—STOPS—EVIDENCE—CONTRABAND—PLAIN
   VIEW—CRIMINAL LAW—CONSTITUTIONAL LAW.

   The police have the right to enter a building to stop and tempo-
   rarily detain a person fleeing a police raid, and because the
   police have a right to be in the building any contraband which
   is in plain view may properly be seized as evidence; the seizure
   of objects within the plain view of an officer, lawfully in a place
   where he has a right to be, is not proscribed by the Fourth
   Amendment (US Const, Am IV).

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 5 Am Jur 2d, Arrest §§ 44–49.
[4] 68 Am Jur 2d, Searches and Seizures § 85.
[5, 7] 75 Am Jur 2d, Trial §§ 729–737.
[6] 75 Am Jur 2d, Trial § 906.

5. CRIMINAL LAW—INSTRUCTIONS TO JURY—DEFENSES—ALIBI—REA-
      SONABLE DOUBT.

   An instruction to a jury on the defense of alibi should indicate
   that the defendant need not fully establish an alibi and need
   only raise a reasonable doubt as to his presence at the scene of
   the crime at the time it allegedly was committed; thus, an
   instruction which indicated, among other things, that the jury
   should acquit a defendant if they had "a reasonable doubt as to
   whether the defendant was there at the time and place named"
   was proper.

6. APPEAL AND ERROR—CRIMINAL LAW—INSTRUCTIONS TO JURY—PRE-
      SERVING QUESTION—FAILURE TO OBJECT.

   Failure to object at trial to the trial court's instructions to the
   jury precludes appellate review of the instructions.

7. CRIMINAL LAW—INSTRUCTIONS TO JURY—DEFENSES—ALIBI—CASE
      PRECEDENT—RETROACTIVITY.

   An instruction to the jury on the defense of alibi which stated in
   part that an alibi is a defense which is easy to prove and hard
   to disprove was proper in a case which was tried prior to a
   recent Supreme Court decision which has disapproved such an
   instruction but which has not been given retroactive effect.

Appeal from Recorder's Court of Detroit. Mich-
ael J. Connor, J. Submitted Division 1 March 5,
1975, at Detroit. (Docket No. 18629.) Decided April
23, 1975.

Robert Daniels was convicted of armed robbery.
Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Patricia J. Boyle,* Principal
Attorney, Research, Training and Appeals, and
*John L. Thompson, Jr.,* Assistant Prosecuting At-
torney, for the people.

*Carl Ziemba,* for defendant.

Before: Allen, P. J., and McGregor and M. F. Cavanagh, JJ.

McGregor, J. Defendant was charged with the offense of armed robbery, MCLA 750.529; MSA 28.797. At a jury trial, on September 17 and October 1, 1973, in Detroit Recorder's Court, the defendant was found guilty and sentenced; he now appeals as of right.

Defendant first contends that the trial court committed reversible error in denying his motion to suppress items seized at the time of his arrest, on grounds that the arrest was made without probable cause.

From a careful and detailed analysis of the evidence, this appears to be a close question and the most meritorious of defendant's three allegations of error.

From the record it is evident that the Felony Prevention Department of the Detroit Police, commonly called "STRESS", received a telephone call from an unidentified person. Officer Virgil Starkey took the call; the caller told him that "if you want the guys that is pulling the gas-station *[sic]* and posing as gas officers, they are on Ferguson". Starkey testified that the caller stated that the house was near Keeler on Ferguson; in addition, the caller said that the suspects drove a late-model, leased, beige Plymouth Duster, license number JGP855. The officer did not ask for the basis of this information, nor did he obtain the identity of the caller.

The police found the automobile described in front of the address of 15757 Ferguson, about one block from the intersection of Keeler and Ferguson Streets. A police observation of this address was then commenced.

At some point during the surveillance, Officer Starkey contacted two informants who had given him information previously; both these informants were known to the officer, one had been used for information "extensively", while the other had been used occasionally. Both informants gave the officer similar information, naming names, describing "two white boys", and "several other black males". Defendant's name was not mentioned. The informants also told Officer Starkey that these persons lived near Puritan and Ferguson, and drove a beige Duster. In addition, the *modus operandi* of the robberies was described—that the robbers posed as gas-men and police officers in order to gain entrance. Later, the informants described the two white males involved. One was "about 6 foot, long blond hair with a thin beard or goatee. He also weighed about 180, or 180 to 190". The second male was described by one of the informants as a "white male approximately 25 years of age, long blond or brown hair, light brown hair, approximately 150". One of the informants based his statements on personal knowledge gained at a party, where he had heard the named suspects boast of the robberies. In response to questions by the trial judge, Officer Starkey related two specific instances in which information given to the officer by the informant based on his personal knowledge had been found to be accurate. Also, Officer Starkey testified that both informants were reliable and both had given information to him previously upon which other arrests had been made.

Officer Starkey further testified that he had consulted the "preliminary complaint reports in the detective division concerning holdups involving persons posing as police officers or gas-men. From

these sources, he compiled seven or eight descriptions and kept copies with him at the stake-out. He further testified that, during the surveillance, no independent evidence of criminal activity was collected. However, persons who fitted the description compiled by the police were seen leaving and entering the house. Officer Starkey testified that the police were waiting until all of the suspects were present before making the arrests.

Further, the officer testified, on March 16, 1973, the police officers decided to make their move: on that date, a Pontiac automobile was in the driveway, and two black males and one white male were seen entering the automobile; the white male fitted the description received from the informant and also derived from the police reports; Officer Starkey recited the details of that description as he testified. A black male who fitted one of the descriptions was already in the driver's seat; Officer Starkey again remembered the description and recited it from the police records.

At this time, a third black male, this defendant, was standing at the rear of the car, cleaning the window. The police approached the driveway, but did not reach it before the Pontiac automobile drove off. A spotlight was shone on the Pontiac and three patrolmen jumped out of the police car. At least one of these patrolmen was in plainclothes. This defendant ran into the house and, Officer Starkey testified, when the police vehicle came to a stop in front of the Pontiac, the other black male dropped a gun into the Pontiac.

Officer Starkey chased this defendant into the house; he testified that he had a description in his mind while in this pursuit, but could not remember the exact description during his testimony. He explained that at the time of the arrest he had

been reviewing the copies of the descriptions nightly so it was then fresh in his mind; when questioned concerning the preliminary complaint reports, he admitted that only one written description contained therein fitted the defendant: "Black male, slim-built, medium complexion, large Afro, small mustache." Under the exigency of the circumstances, Officer Starkey chased the defendant upstairs and arrested him in one of the bedrooms on the second floor.

When the officer entered the bedroom to arrest the defendant, he observed a shotgun on the bed, next to some coats; he knew a shotgun had been taken in the robberies but did not know whether this was that particular gun. He also viewed a large-cluster diamond ring, which matched descriptions of a stolen ring, on the dresser in the room. He did not have to go closer to observe it. Police officers then searched the whole house and found more coats and guns and television sets.

The officers had probable cause to make a valid arrest if, at that moment, the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man believing that the defendant had committed or was committing an offense. *People v Wolfe,* 5 Mich App 543; 147 NW2d 447 (1967).

Defendant moved to suppress the information concerning these items of stolen property on the ground that his arrest was without probable cause. The trial court ruled that the evidence was admissible. Specifically, the following items were admitted into evidence: (1) a 12-gauge shotgun (seen on the bed), (2) a fur coat (seen in the hallway), (3) a television set, which was seized in the living room. The last two of these items were identified by

Herbert Washington, one of the robbery victims, as his property.

When only an informant's information is involved, two requirements exist: first, the police officer should have a basis for finding that informant to be reliable, and second, the police officer should be informed of some of the underlying circumstances from which the informant drew his conclusion. *Aguilar v Texas,* 378 US 108; 84 S Ct 1509; 12 L Ed 2d 723 (1964), *McCray v Illinois,* 386 US 300; 87 S Ct 1056; 18 L Ed 2d 62, *reh den,* 386 US 1042; 87 S Ct 1474; 18 L Ed 2d 616 (1967).

The testimony of the two informants was sufficient to support a finding of probable cause with respect to some of the suspects. One informant testified from personal knowledge as to the statements made by the suspects concerning their involvement in the robberies. In addition, these informants had proven to be reliable in the past. There was sufficient probable cause to arrest those identified. In addition to the evidence which links this defendant to the crime was his flight from the scene of the arrest and the description which Officer Starkey had obtained from the police reports.

The crucial question becomes whether the police could lawfully stop the defendant. That question is determined by whether the officer had observed "unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot". *Terry v Ohio,* 392 US 1, 30; 88 S Ct 1868; 20 L Ed 2d 889 (1968), *People v Whalen,* 390 Mich 672; 213 NW2d 116 (1973).

In *People v Dogans,* 26 Mich App 411; 182 NW2d 585 (1970), this Court indicated that the police would have the right to enter a building to stop and temporarily detain a person fleeing a

police raid. An ordinary citizen would not unexpectedly flee the scene. With all of their other information in its entirety, the police could at least stop the persons and clear up the whole situation.

Since the police had the right to enter the house to stop and question this defendant, they could seize any evidence in plain view.

The seizure of objects within the plain view of an officer, lawfully in a place where he had a right to be, is not proscribed by the Fourth Amendment.

No reversible error occurred in admitting this contraband into evidence.

At trial, the defendant raised an alibi defense, after giving the required notice of an alibi defense.

Defendant contends that the trial judge committed reversible error by giving an alibi instruction such that the jury was not adequately informed that defendant should be acquitted if his alibi defense raised a reasonable doubt that he was present at the scene of the crime at the time it occurred.

Concerning the defense of alibi, the trial judge instructed the jury as follows:

"Now, members of the Jury, in order to sustain a conviction under this statute and under this Information the State is required to prove each and every element of the offense beyond a reasonable doubt. That means they must prove that the offense, if any, was committed in the City of Detroit—and this case it is alleged that it was committed at 2199 Oakman Avenue, in the City of Detroit—that it was committed on or about the date alleged in the Information—and that is February 22, 1973—and, of course, they must prove each and every element of the offense, and I will instruct you in that in more detail.

"The Defendant by his plea of not guilty denies each and every allegation that is set up by the People, and

more particularly one of the defenses interposed by the Defendant in this case is what is known in law as alibi. "Alibi" means, it is taken from the Latin, which does mean "elsewhere", that is, that the Defendant was at another place at that time of the commission of the crime. And I do instruct you that such a defense is as proper and as legitimate a defense as any other defense, and you are to give the same credit to witnesses who testify concerning the alibi defense as you would to any of the witnesses who testified to anything else, using the same standards to judge their credibility that you would with any witness. *If you have a reasonable doubt as to whether the Defendant was there at the time and place named, then you should acquit him.* The burden of proof is upon the State to show that he was there at the time and place in question, and that burden does not shift to the Defendant.

"Now, ladies and gentlemen, you are to scrutinize evidence in relation to alibi as that of a defense easy to prove and hard to disprove; therefore, you should be careful and cautious in examining the evidence in regard to it." (Emphasis added.)

Defendant contends that the language above underscored was ambiguous enough to allow the jury to conclude improperly that the "place named" referred to the place where defendant's alibi placed him, as opposed to the place where the crime was committed. That contention should be rejected on several grounds. First, it has long been held that a proper charge should indicate that the defendant need not fully establish an alibi, and need only raise a reasonable doubt as to his presence at the scene of the crime at the time it allegedly was committed. *People v Marvill,* 236 Mich 595; 211 NW 23 (1926), *People v Lee,* 391 Mich 618; 218 NW2d 655 (1974). This instruction is well established and has never been held to be in violation of that rule. An alibi instruction identical to the one here was upheld in *People v Trzil,* 235

Mich 469; 209 NW 564 (1926), and the cases cited therein. See also, 2 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 906, p 1212, form No. 278. The burden is on the defendant clearly to point out where it is defective. Instructions have been upheld which stated that the jury should acquit.

" 'And if, in view of the evidence, you have any reasonable doubt as to whether the defendant was at some other place at the time the crime was committed, you should give him, the defendant, the benefit of any doubt and find him not guilty.' " *People v Loudenslager,* 327 Mich 718, 726; 42 NW2d 834 (1950). Also, see *People v Lee,* 391 Mich 618; 218 NW2d 655 (1974).

The *Loudenslager* decision held that "Defendant was not prejudiced by the charge as given".

Finally, no objection was made at trial to these instructions. In *People v Lee, supra,* where it was contended that the language of an alibi instruction impermissibly shifted the burden of proof, our Supreme Court held that the matter was not preserved for appeal because no objection was made at trial. Failure to object precludes appellate review.

Defendant's final contention is that the trial judge committed reversible error by giving an alibi instruction which stated in part that an alibi is a defense which is easy to prove and hard to disprove.

At the time of this trial, the law was to the effect that a jury instruction to carefully scrutinize the evidence relied upon to prove it (the alibi defense) for the reason that an alibi is a defense which is easily claimed and hard to disprove was proper. *People v Schaner,* 302 Mich 6; 4 NW2d 444 (1942), *People v Marcus,* 253 Mich 410; 235 NW

202 (1931), *People v Wudarski,* 253 Mich 83; 234 NW 157 (1931), *People v Tice,* 115 Mich 219; 73 NW 108 (1897).

In a recent case, the Michigan Supreme Court has taken the step that defendant requests this Court to take. In *People v McCoy,* 392 Mich 231; 220 NW2d 456 (1974), the Supreme Court outlawed the further use of the complained-of alibi instructions. It is clear that *McCoy* did not change the result for cases tried before that case was published. In general, this Court will not give a new rule establishing new rights for criminal defendants retroactive effect absent a clear statement to the contrary by the Michigan Supreme Court. *People v Tooks,* 55 Mich App 537; 223 NW2d 63 (1974). That clear showing is absent in *McCoy,* and, in fact, there appears to be a clear statement that this new rule is to be applied prospectively only. The instruction on the alibi defense was proper at the time this trial was held.

Conviction affirmed.