PEOPLE v ERNEST GREEN

OPINION OF THE COURT

1. CRIMINAL LAW—ATTORNEY AND CLIENT—PROSECUTORIAL INTER-
   VIEWS WITH DEFENDANT—NOTICE TO DEFENSE COUNSEL—ETH-
   ICS.

   It is improper and unethical for a prosecuting attorney to com-
   municate with a criminal defendant without first notifying
   defense counsel and obtaining his consent, regardless of who
   initiates the communication between the defendant and the
   prosecutor.

2. CRIMINAL LAW—ATTORNEY AND CLIENT—EVIDENCE—PROSECUTO-
   RIAL INTERVIEWS WITH DEFENDANT—ADMISSIBILITY OF EVIDENCE
   —ETHICS.

   It is unethical for a prosecutor to interview a criminal defendant
   without first notifying defense counsel and getting counsel's
   permission, but such an interview does not render inadmissible
   evidence obtained during the interview.

3. EVIDENCE—PHOTOGRAPHIC EVIDENCE—DISCRETION.

   The admission of photographic evidence is within the discretion
   of the trial judge.

4. EVIDENCE—PHOTOGRAPHS—PREJUDICIAL EVIDENCE—APPEAL AND
   ERROR.

   The admission of photographs into evidence is error where the

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 10] 21 Am Jur 2d, Criminal Law §§ 222, 309–317.
[3, 4] 21 Am Jur 2d, Criminal Law §§ 368, 369.
   Admissibility of evidence of photographic identification as affected
   by allegedly suggestive identification procedure. 39 ALR3d 1000.
[5] 75 Am Jur 2d, Trial § 756.
[6] 29 Am Jur 2d, Evidence §§ 787, 790.
[7] 29 Am Jur 2d, Evidence § 831.
[8] 75 Am Jur 2d, Trial §§ 775–779.
   Propriety under Griffin v California and prejudicial effect of unre-
   quested instruction that no inferences against accused should be
   drawn from his failure to testify. 18 ALR3d 1335.
[9] 4 Am Jur 2d, Appeal and Error § 8.

photographs serve no purpose other than to excite passion and prejudice in the minds of jurors.

5. CRIMINAL LAW—EVIDENCE—BURDEN OF PROOF—ELEMENTS OF CRIME—INSTRUCTIONS TO JURY—ADMISSIBILITY OF EVIDENCE— STIPULATIONS.

The prosecution has the burden of establishing each and every element of a charged offense beyond a reasonable doubt and the jury must be instructed to consider each element regardless of any stipulations between the parties; there is no per se rule that stipulations negate admissibility of evidence.

6. HOMICIDE—EVIDENCE—PHOTOGRAPHS—INFLAMMATORY PHOTO-GRAPHS.

A defendant was not prejudiced by the admission of photographs of a murder victim into evidence where there was nothing gruesome or inflammatory about the photographs.

7. CRIMINAL LAW—EVIDENCE—POLYGRAPH—ALIBI WITNESS—CROSS-EXAMINATION.

Evidence of polygraph examinations is generally inadmissible; however, reversible error did not result where a defendant's chief alibi witness mentioned, in response to the prosecution's questions during cross-examination, that he had submitted to a polygraph examination and where (1) defense counsel did not object or request a cautionary instruction, (2) the reference by the defense witness was not purposely elicited by the prosecutor, and (3) the testimony in question was isolated and was not pursued or emphasized.

8. CRIMINAL LAW—INSTRUCTIONS TO JURY—DEFENDANT'S FAILURE TO TESTIFY—REQUEST BY DEFENSE COUNSEL—APPEAL AND ERROR.

A trial court may not instruct the jury on the effect of a criminal defendant's not taking the witness stand in his own defense where defense counsel expressly requests that no such instruction be given.

9. APPEAL AND ERROR—CASE PRECEDENT—RETROACTIVE APPLICATION.

The Court of Appeals will not retroactively apply new rules established by the Supreme Court absent a clear statement by the Supreme Court that there is to be retroactive application.

DISSENT BY M. F. CAVANAGH, J.

10. CRIMINAL LAW—ATTORNEYS AND CLIENT—PROSECUTORIAL INTER-VIEW OF DEFENDANT—APPEAL AND ERROR—NOTICE TO DEFENSE COUNSEL.

*The admission of evidence obtained during police questioning of a*

*defendant in the absence of the defendant's attorney was reversible error where the prosecutor was a direct participant in the preparation for and the conducting of the interview in the absence of defense counsel; a prosecutor must be absolutely prohibited from interviewing a defendant, or authorizing the police to do so, without first obtaining the consent of defense counsel or the affirmation of defense counsel that he has advised the defendant of his rights and that, following this advice, the defendant still wishes to be interviewed without him.*

Appeal from Oakland, Robert L. Templin, J. Submitted December 13, 1976, at Lansing. (Docket No. 25298.) Decided March 29, 1977.

Ernest E. Green was convicted of first-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Thomas S. Richards,* Assistant Prosecuting Attorney, for the people.

*Renfrew, Moir, & Burgett, P. C.* (by *Dennis J. Kuirsky* and *John E. Stover),* for defendant.

Before: J. H. GILLIS, P. J., and M. F. CAVANAGH and D. E. HOLBROOK, JR., JJ.

J. H. GILLIS, P. J. On October 19, 1974, Phyllis McPhail left her home at approximately 8:30 p.m. to go to the Hilton Market in the City of Pontiac. She took her six-month old son with her. When she failed to return, her husband conducted a search and found the automobile in the market parking lot with the keys in it and the child asleep. The police were called.

Two days later, Phyllis McPhail's body was

found floating in the Clinton River approximately one mile from the Hilton Market. Wounds were found in her back and chest.

Defendant was charged with the murder of Phyllis McPhail. A jury trial was commenced on May 12, 1975. On May 19, 1975, the jury returned a verdict of guilty of first-degree murder, MCLA 750.316; MSA 28.548. Defendant appeals as of right raising four issues. Additional facts, where necessary, will be related within the discussion of the issues pertinent thereto.

On October 24, 1974, subsequent to his arrest and after being given the *Miranda* warnings,[1] defendant was interrogated by a detective from the Pontiac Police Department. The questioning took place near the location where the victim's body was found. Defendant denied having any knowledge of the murder.

On October 28, 1974, defendant was again interrogated by the same detective. Defendant had called the detective to discuss with him alleged harassment by the guards at the jail. Defendant was again given the *Miranda* warnings and again denied knowledge of the murder; however, defendant did give the detective a detailed account of his whereabouts on the evening of the murder.

On January 29, 1975, subsequent to the preliminary examination, the detective, along with the assistant prosecutor handling the case, interviewed defendant at the jail. This meeting was held pursuant to defendant's request. Defendant's attorney was not informed of this meeting. Defendant was given the *Miranda* warnings after which he admitted knowledge of the alleged murder weapon and of the fact of a killing, although he denied being the perpetrator of the crime.

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

The trial judge conducted a *Walker*[2] hearing and determined that the statements made during the course of the interviews would be admissible at trial. At trial, the statements were admitted into evidence. Defendant's first claim is that the trial judge erred in admitting into evidence the statements made by defendant during the January 29th interview. It is defendant's contention that statements made during an interview in which the prosecutor participated in absence of defense counsel are inadmissible. Although there is a question as to whether the issue has been properly preserved for appeal, we will assume for argument's sake that it has been preserved.

There is no question that but for the presence of the prosecuting attorney, the statements were admissible. *People v Moore,* 51 Mich App 48, 50–51; 214 NW2d 548 (1974), *People v Jordan,* 34 Mich App 360, 367–369; 191 NW2d 58 (1971), *lv den,* 386 Mich 776 (1971), *cert den,* 406 US 908; 92 S Ct 1616; 31 L Ed 2d 818 (1972).

Disciplinary Rule 7-104 of the Code of Professional Responsibility, Canons and Disciplinary Rules as adopted by the Michigan Supreme Court states:[3]

"(A) During the course of his representation of a client a lawyer shall not:

"(1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.

"(2) Give advice to a person who is not represented by a lawyer, other than the advice to secure counsel, if the

[2] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

[3] 385 Mich lxxx (1971), adopted October 4, 1971.

interests of such person are or have a reasonable possibility of being in conflict with the interests of his client."

This rule is similar to Canon 9 of the Canons of Professional Ethics which provided in pertinent part:

"A lawyer should not in any way communicate upon the subject of controversy with a party represented by counsel; much less should he undertake to negotiate or compromise the matter with him, but should deal only with his counsel."

The Committee on Professional and Judicial Ethics of the Michigan State Bar interpreted Canon 9 as follows:

"On balance, we hold it improper for a prosecuting authority to interview a defendant in a criminal case without the knowledge and consent of his attorney of record." Opinion 202, 46 Mich State B J, 29, 30 (May 1967).

There is no question in our minds that this interpretation applies to Disciplinary Rule 7-104. In case of doubt, we now take this opportunity to call to the attention of the prosecutors of this state as well as to the remainder of the state bar that it is improper and unethical for a prosecuting attorney to communicate with a criminal defendant without first notifying defense counsel and obtaining his consent regardless who initiates the communication.

Clearly, the prosecutor's conduct in this case was improper. However, the question is not one of ethics but rather one of the admissibility of the evidence obtained during the course of the complained of interview. The trial judge determined

that the statements were voluntarily given and defendant makes no claim that they were not. Rather, he contends that the meeting resulted in constitutional infringements.[4] Although there is a dissenting minority, ethical violations such as the one in this case have not as of yet resulted in a suppression of evidence. See Judge (now Justice) LEVIN's dissenting opinion in *People v Patterson,* 39 Mich App 467; 198 NW2d 175 (1972), and cases cited therein. We decline the invitation to join that minority.

Defendant's second contention is that the trial judge committed reversible error in admitting into evidence, over objection, certain photographs of the victim. Defendant argues that because his defense was alibi and the nature of the wounds and the manner in which they were inflicted were stipulated at trial that the photographs had no probative value and served only to inflame and prejudice the jury.

It is well settled that the admission of photographic evidence is within the discretion of the trial judge. *People v Eddington,* 387 Mich 551; 198 NW2d 297 (1972). However, if the photographs serve no purpose other than to excite passion and prejudice in the minds of the jurors, then their admission is deemed to be error. *People v Falkner,* 389 Mich 682; 209 NW2d 193 (1973). There is no per se rule that stipulations negate admissibility. The prosecution has the burden of establishing each and every element of the charged offense beyond a reasonable doubt, and the jury must be instructed to consider each element regardless of stipulation. *People v Reed,* 393 Mich 342; 224 NW2d 867 (1975), *cert den,* 422 US 1044, 1048; 95 S Ct 2660, 2665; 45 L Ed 2d 696, 701 (1975). We

---

[4] Specifically defendant cites US Const, Am VI and Am XIV.

have examined the photographs in this case. They depict the corpus delicti. We find nothing gruesome or inflammatory about them. Defendant was not prejudiced.

In answering questions posed by the prosecutor during cross-examination, defendant's chief alibi witness mentioned that he had submitted to a polygraph examination. Defendant claims reversible error.

Defendant is correct that generally evidence of polygraph examinations is inadmissible. *People v Frechette,* 380 Mich 64; 155 NW2d 830 (1968), *People v Rodgers,* 66 Mich App 658; 239 NW2d 701 (1976). However, for the following reasons, which are explained in *People v Whitfield,* 58 Mich App 585; 228 NW2d 475 (1975), we find no error in this case. Defense counsel did not object nor request a cautionary instruction. The reference to the polygraph examination was made by a defense witness and we do not find that the prosecutor purposely interjected the same. Additionally, the testimony in question was isolated and was not pursued nor emphasized.

Over objection by defense counsel, the trial judge gave the following instruction to the jury:

"Now, in this case the Defendant has not taken the stand. Under our law, the Defendant may take the stand or elect not to do so.

"When he does not take the stand in his own behalf, Counsel have no right to comment on that nor has the Court any right to comment about it, and you have no right to take that into consideration in any manner in arriving at your verdict.

"It is his right to take the stand or he may elect not to do so, as he shall choose, and you are not in any sense to construe that against him."

Defendant's final allegation is that in view of *People v Hampton*, 394 Mich 437; 231 NW2d 654 (1975), the trial judge committed reversible error. *Hampton* was decided after the trial in this case. In *Hampton*, our Supreme Court held:

> "In a criminal case where the defendant elects not to testify, the court *may* instruct on the effect thereof, unless defense counsel (or the defendant acting *in propria persona)* expressly requests, before the Court instructs the jury, that no instruction be given on the subject in which event no instruction on the subject shall be given. In trials involving more than one defendant, the court *shall* give such an instruction upon the request of any defendant." 394 Mich 437, 438. (Emphasis in original.)

*Hampton* established a new rule, and absent a clear statement by the Michigan Supreme Court we will not apply new rules retroactively. *People v Daniels*, 60 Mich App 458, 468; 231 NW2d 386 (1975). At the time of trial, the trial judge did not err, *People v Harris*, 52 Mich App 739; 218 NW2d 150 (1974), *lv den*, 394 Mich 758 (1975), *reh den*, 395 Mich 908 (1975), but rather relied on a long-standing practice for which we cannot fault him, *People v Garcia*, 398 Mich 250; 247 NW2d 547 (1976).

Affirmed.

D. E. HOLBROOK, JR., J., concurred.

M. F. CAVANAGH, J. *(dissenting).* I dissent because I find the reasoning of Justice LEVIN's dissent in *People v Patterson*, 39 Mich App 467, 472; 198 NW2d 175, 178 (1972), more persuasive. In *Patterson, supra,* the breach of the canons was indirect, namely, failing to prevent the police from questioning a defendant in the absence of his

attorney. Here, the prosecutor was a direct participant in the preparation for and the conducting of the counselless interview. The effect of the prosecutor's presence and his influence upon the defendant is inestimable. Of equal uncertainty is whether any statements at all would have been produced had counsel been present prior to the commencement of any interrogation.

If Disciplinary Rule 7-104 is to have any meaningful effect, a prosecutor must be absolutely prohibited from interviewing a defendant, or authorizing the police to do so, without first obtaining the consent of defense counsel or the affirmation of defense counsel that he has advised the defendant of his rights and, following this advice, the defendant still wishes to be interviewed without him. Failure to do so should result in the suppression of any resulting evidence.

Accordingly, I would hold that the conduct of the prosecutor in this case necessitates reversal.