**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Mary Cullar BROWN,
Defendant-Appellant.**

No. 75–2484.

United States Court of Appeals,
Fifth Circuit.

March 8, 1978.

Rehearing Denied April 12, 1978.

Louis M. Jepeway, Jr., Miami, Fla., for M. Brown.

Michael P. Gale, Elliot S. Shaw, Miami, Fla., for E. Brown.

Jacob V. Eskenazi, U. S. Atty., J. Daniel Ennis, Asst. U. S. Atty., Miami, Fla., Sidney M. Glazer, Atty., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before BROWN, Chief Judge, THORN-BERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, SIMPSON, MORGAN, CLARK, RONEY, GEE, TJOFLAT, HILL and FAY, Circuit Judges.

BY THE COURT:

This case presents two questions for our review. The first is whether Mary Cullar Brown had a right to counsel at the time incriminating statements were obtained from her while in the county courthouse enroute to her state preliminary hearing. The second question is whether or not she voluntarily and knowingly waived that right, if it existed. Since we find a clear intelligent waiver of counsel, it is unnecessary for us to answer the first question. The conviction is affirmed.

Mary Cullar Brown and three others, Edwin Richard Brown, Phyllis Diane Brown, and Marion Williams, were charged by a grand jury in a four count indictment. The first count charged that all four conspired between August 7, 1974, and August 13, 1974, to unlawfully steal and possess Sears Merchandise Certificates having a value in excess of $100 which were part of an interstate shipment, in violation of 18 U.S.C. § 659, and alleged several overt acts performed in furtherance of that conspiracy in violation of 18 U.S.C. § 371. Counts II and III did not name defendant, Mary C. Brown, who is the appellant before this court. Count IV charged Mary C. Brown and Phyllis Brown with knowingly possessing Sears Merchandise Certificates valued

at more than $100 which had been stolen while part of an interstate shipment, in violation of 18 U.S.C. §§ 659, 2.

The district court denied, among others, Mary Brown's motion to suppress evidence derived from her courthouse interview with the F.B.I. agent. All four defendants were tried together and all were convicted and sentenced. Mary C. Brown and Edwin Richard Brown appealed to this court on numerous grounds and a three-judge panel, after oral argument, reversed Mary C. Brown's conviction and affirmed Edwin Brown's. *United States v. Brown*, 551 F.2d 639 (5th Cir. 1977). We granted the Government's petition for rehearing en banc as to Mary C. Brown and heard oral argument. The court en banc reverses the panel decision and affirms the conviction of Mary C. Brown by the district court.

The facts are discussed extensively in the panel decision and the dissent. *United States v. Brown*, 551 F.2d 639 (5th Cir. 1977). For the purposes of this opinion we will only repeat those facts germane to the issue before us.

Defendant and co-defendant Phyllis Brown, were questioned at Sears, Roebuck & Co., Miami, Florida on August 9, 1974, by the store security personnel for attempting to purchase merchandise with invalidated Sears Merchandise Certificates. After being read their *Miranda*[1] rights, they told the security guard that they found the certificates while shopping in the basement of Richards Department Store in Miami, Florida. Later that day the two were taken into custody by Miami police officers and again read their *Miranda* rights.

After spending the night in jail, Mary C. Brown and her daughter were released on bond. At the bond hearing on August 10, 1974, the state public defender was appointed to represent her.

On August 14, 1974, on the way to her scheduled state preliminary hearing[2] both

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. The preliminary hearing was on state criminal charges of grand theft and receiving stolen

property arising out of the same circumstances as the instant federal charges. Fla.Stat. §§ 812.021, 812.031.

Mary C. Brown and her daughter were intercepted by two F.B.I. agents in the corridor outside the courtroom. Upon intercepting Mary Brown, Agent Parga identified herself, and explained they wished to ask some questions concerning the Sears Merchandise Certificates. Full *Miranda* warnings were read to Mary Brown as follows:

> Before we ask you any questions, you must understand your rights.
>
> You have the right to remain silent.
>
> Anything you say can be used against you in court.
>
> You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.
>
> If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.
>
> If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

After this reading, Agent Parga had Mary Brown read and sign the following waiver:

### WAIVER OF RIGHTS

> I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

During the questioning that followed, Mary C. Brown denied that Edwin Brown was related to her. At trial, birth certificates were introduced showing that Edwin Brown and Phyllis Brown have a mother by the same name, Mary Elizabeth Cullar.

The defendant relies on *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964) for the proposition that once the criminal process shifts from investigatory to accusatory she cannot be interrogated by the government unless her attorney is notified. She states *Massiah* too broadly. *Massiah* arose because of "secret interrogation" accomplished surreptitiously and has no relationship to the facts present here. This interrogation took place in a public corridor with full identification of the individuals and subject matter discussed. Because we find Mary Brown made a clear and voluntary waiver of any right to counsel, we are not going to decide whether the right to counsel attached under the facts of this case.

■ A voluntary waiver of the presence of counsel is recognized by this circuit. In a case very similar to the one at bar, *United States v. Vasquez*, 476 F.2d. 730 (5th Cir. 1973), the defendant was in custody in a Florida county jail on a state charge of murder when an F.B.I. agent came to question him about an M–14 rifle that had been seized in connection with a recent shooting. Vasquez was advised of his rights including the right to the presence of counsel. He waived that right and agreed to discuss the rifle (not the shooting) with the F.B.I. agent. Vasquez was represented by appointed counsel on the state charge. He was subsequently charged and convicted of the federal crime of possession of an unregistered firearm. This court affirmed that conviction stating:

> In this case where the defendant was carefully apprised of his right to have counsel, there is no merit in the contention that the defendant was unable to waive that right.

■ The district court found that Mary Brown waived her right to the presence of counsel and thereafter made a voluntary statement to the F.B.I. agent. The standard to be applied in determining the question of waiver under federal constitutional law is that the government must prove "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938).

■ Mary Brown had a college education having attended Florida Memorial College in St. Augustine, Florida, for four years. She worked as an elementary school teacher for thirteen years. In the days before she made the statement she had been advised of her rights by the Sears security guard and the Miami city police. The F.B.I.'s *Miranda* warnings were read to her by the agent and given to her to read and sign. The trial judge found that Mary Brown understood these rights and under the clearly erroneous standard for review this finding was proper.

■ Mary Brown made a clear and unequivocal waiver of any right she may have had to the presence of counsel. She knew she had appointed counsel on the state charges and at the time of the questioning was on her way to meet with him. Even though the F.B.I. agent assumed Mary Brown had counsel, we do not mandate that *Miranda* warnings include a specific question naming counsel and an asking if he or she wants that particular attorney present. Under the facts of this case the *Miranda* warnings were sufficient, when dealing with a well-educated teacher, to make clear that "an attorney" includes the state public defender already appointed.[3]

Our decision in this case does not reduce the shock we felt upon learning of the F.B.I.'s choice of location to interview the defendant. Nothing in the record indicates that Mary Brown could not have been interviewed at her residence or at some location other than that selected. The time and place of this meeting seems most inappropriate. It was a public corridor, however, and not a forced or custodial interrogation.

On the facts of this case the court below correctly refused to suppress the statements obtained from Mary Brown. We therefore affirm the conviction. The panel was presented two other issues asserted by Mary Brown and two by Edwin Brown. In

this en banc decision we are not disturbing the conclusions made by the three-judge panel on those issues in any manner.

JAMES C. HILL, Circuit Judge, concurring.

My concurrence in our majority opinion is not qualified. I concur.

We have, though, the very thoughtful and earnest dissent prepared by Judge Simpson, joined by Judges Goldberg, Godbold, and Morgan. It appearing to me that the dissent is largely from something not held by our majority, I tender these few additional lines.

I do not view the Supreme Court's holding in *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), referred to by the dissenters, and our Circuit's earlier decision of *United States v. Vasquez,* 476 F.2d 730 (5th Cir. 1973), as being contrary. They involved different situations. It seems to me that our present case is a *Vasquez* case, not a *Brewer* case.

Mary Cullar Brown had no counsel, retained or appointed, to represent her in connection with the federal investigation being conducted by the F.B.I. agents. Indeed, it nowhere appears that her counsel in the state case, a Florida public defender, would have been authorized to deal with any federal matters at the expense of the taxpayers of that state. Therefore, had the agents gratuitously advised her that she had the right to have that attorney attend upon the interview, they might well have been giving incorrect legal advice.

⌈Here, federal agents were seeking information about a possible federal offense.⌋ An obvious source of that information was a person charged in state proceedings with possession of property which might well have been taken, by someone, in the commission of the federal offense.[1] That, in my view, is a *Vasquez* situation.

---

**3.** Clear *Miranda* warnings were given to Mary Brown even though she was not in custody. The fact that she was one of a group of suspects upon which an investigation had begun to focus does not, however, make *Miranda*

warnings mandatory. See *Beckwith v. United States,* 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976).

**1.** My dissenting brothers jump too easily over a ditch too wide for me when they reach the

We would have a *Brewer* case if Mrs. Brown had obtained, by appointment or retention, counsel to represent her in connection with the federal investigation and, knowing of this, the federal agents had awaited the absence of the attorney from her immediate presence and commenced an interview with her. I do not read our majority opinion as deciding whether or not, under such a set of circumstances, the dialogue between Brown and the agents would have amounted to a waiver of the presence of, or prior consultation with, her attorney. It seems to me that our brothers who dissent assume that the majority does decide that question in the affirmative. Upon that assumption, they lustily dissent.

Being too heavily laden with issues before us, I decline to decide one that is not. I shall, however, file away the dissent in this case for thoughtful review should the case it addresses appear.

SIMPSON, Circuit Judge, with whom GOLDBERG, GODBOLD and MORGAN, Circuit Judges, join, dissenting.

The majority today holds that the Government may sustain its heavy burden of proving waiver of the right to counsel by producing a boilerplate waiver of rights form signed by the defendant. To be sure, some cases support the majority's view. Other cases—and indeed the weight of logic and experience—argue against the majority. I dissent out of a concern that today's holding eviscerates a substantial component of this vital Sixth Amendment right.

## I. THE RIGHT TO COUNSEL: MIRANDA VERSUS MASSIAH

The majority fails to make clear whether it is evaluating waiver of the right to counsel in terms of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), which focused on securing the Fifth Amendment privilege against compelled self-incrimination, or *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), which involved the broader ramifications of the Sixth Amendment right to counsel. Although *Miranda* discussed in detail the right to counsel, 384 U.S. at 469–77, 86 S.Ct. at 1625–29, the "prime purpose" of that case was "to guarantee full effectuation of the privilege against self-incrimination", *Johnson v. New Jersey,* 384 U.S. 719, 729, 86 S.Ct. 1772, 1779, 16 L.Ed.2d 882 (1966), and "not to vindicate the constitutional right to counsel as such". *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972). Furthermore, "nothing decided or said in [*Miranda* or *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964)] links the right to counsel only to the protection of Fifth Amendment rights". *United States v. Wade,* 388 U.S. 218, 226, 87 S.Ct. 1926, 1932, 18 L.Ed.2d 1149 (1967). Rather, the right to counsel is a broad guarantee that the accused "need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial". Id. Accordingly, waiver of *Miranda* rights and waiver of the right to counsel once it has attached are distinguishable and should be judged separately. *Brewer v. Williams,* 430 U.S. 387, 397, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424 (1977); *United States v. Satterfield,* 558 F.2d 655, 657 (2d Cir. 1976); *United States v. Miller,* 432 F.Supp. 382, 388 (E.D.N.Y.1977).

Further obscuring the majority's waiver analysis is its unfounded observation that *Massiah* "has no relationship to the facts present here" because it involved " 'secret interrogation' accomplished surreptitiously". Majority opinion at 238. In the instant case, Mary Brown knew that she was being questioned by government agents. However, the Supreme Court has expressly held that this fact does *not* distinguish *Massiah*:

---

conclusion that, "because the F.B.I. agents knew precisely when and where to find Mrs. Brown," they must have been in cahoots with the state authorities. Until confronted with persuasive evidence to the contrary, I must believe that agents of the Federal Bureau of Investigation are capable of locating a witness without having Florida's finest draw them a map.

That the incriminating statements were elicited surreptitiously in the *Massiah* case, and otherwise here, is constitutionally irrelevant. [Citations omitted.] Rather, the clear rule of *Massiah* is that once adversary proceedings have commenced against an individual, he has a right to legal representation when the government interrogates him. *Brewer v. Williams, supra,* 430 U.S. at 400, 97 S.Ct. at 1240.

Like *Brewer v. Williams,* this case directly involves the right to counsel. As related in the majority panel opinion, "[h]ere the F.B.I. interrogation took place on August 14, 1974, several days after her arrest, while Mary Brown was on her way to a preliminary hearing on state charges arising out of the identical circumstances on which the [later] federal indictment was based. The investigation concerning the stolen Sears Merchandise Certificates was focused directly on Mary Brown". 551 F.2d at 643. Furthermore, there can be no doubt that the federal and state authorities collaborated in the initial investigation of this case because the F.B.I. agents knew precisely when and where to find Mrs. Brown immediately prior to the state preliminary hearing. This case is virtually indistinguishable from *United States v. Diggs,* 497 F.2d 391 (2d Cir. 1974), cert. denied, 419 U.S. 861, 95 S.Ct. 112, 42 L.Ed.2d 96, where a suspect arrested on state charges in connection with a bank robbery was questioned about the crime by F.B.I. agents. There the Court observed:

> Nor do we consider the fact that Diggs was charged on state rather than federal charges at the time of the interrogation deprived him of his right to counsel at the interrogation, for here . . . the state and federal charges were for the same crime, the federal people knew it, and should have known of his situation as to counsel. Id. at 393.

Clearly, Mrs. Brown needed—and was constitutionally entitled to—the assistance of counsel. The only question decided by this Court en banc is whether she waived her right to counsel.[1]

## II.  THE WAIVER ISSUE

The majority panel opinion considered and rejected the waiver argument, holding that when the government intercepts a criminal suspect minutes before a meeting with her attorney and then proceeds to interrogate her, without notifying her attorney or specifically ascertaining her desires, it cannot then rely on a signed waiver form to establish "a sufficiently clear and unmistakable waiver of the right to the presence of counsel". 551 F.2d at 643 n.13. Judge Fay dissented from this finding on the basis of the language contained in the waiver form signed by Mrs. Brown: "Just how Agent Parga could have determined in a more precise manner whether or not Mary Brown desired her attorney to be present during the questioning is not clear to me". Id. at 648. The en banc majority today adopts Judge Fay's view, holding that when Mrs. Brown, an intelligent and educated woman, signed the waiver form, she "made a clear and unequivocal waiver of any right she may have had to the presence of counsel." Majority opinion at 239.

In reaching its decision, the majority neither explicates the appropriate standard for establishing waiver, nor delineates how, under the facts present here, that standard was met by the government. Viewing this case in light of the purposes of the Sixth Amendment and the realities of criminal investigation, I conclude that no waiver was established.

### A.  *The Standard for Waiving the Right to Counsel*

The majority notes, without elaboration, that "[t]he standard to be applied in determining the question of waiver under federal constitutional law is that the government must prove 'an intentional relinquishment or abandonment of a known right or privi-

---

1.  The majority wisely and correctly declined the government's invitation to hold that Mary Brown's right to counsel with respect to the federal offense had not attached at the time of her interrogation.

lege'. *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)". Majority opinion at 238. While the majority correctly states the standard, it fails to explain how great a burden the government bears in meeting that standard where the right to counsel is involved.

The Supreme Court has cautioned time and again that "courts indulge every reasonable presumption against waiver".[2] "The record must show . . . that an accused was offered counsel but intelligently and *understandingly* rejected the offer. Anything less is not waiver". *Carnley v. Cochran,* 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962) (emphasis added). Only recently the Supreme Court has stated that "[t]his strict standard applies equally to an alleged waiver of the right to counsel *whether at trial or at a critical stage of pretrial proceedings*". *Brewer v. Williams, supra,* 430 U.S. at 404, 97 S.Ct. at 1242 (emphasis added). This language assumes telling significance in light of the stringent requirements for an effective waiver of the right to counsel at trial. Precedents dealing with such requirements are examined below.

In *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the Supreme Court held that inherent in the right to assistance of counsel at trial is the right to be tried without such assistance where the defendant has waived that right as required by *Johnson v. Zerbst, supra.* In addressing waiver, the Court noted:

> Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open". *Adams v. United States ex rel. McCann* [317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942)]. 422 U.S. at 835, 95 S.Ct. at 2541.

Of special relevance to the instant case are Justice Black's observations for a plurality in *Von Moltke v. Gillies,* 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948), cited with approval in *Faretta. Von Moltke* involved an alleged waiver of the right to counsel at trial:

> We have said: "The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused." To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.

This case graphically illustrates that a mere routine inquiry—the asking of several standard questions followed by the signing of a standard written waiver of

2. *Brewer v. Williams, supra,* 430 U.S. at 404, 97 S.Ct. at 1242; *Brookhart v. Janis,* 384 U.S. 1, 4, 86 S.Ct. 1245, 1246, 16 L.Ed.2d 314 (1966); *Glasser v. United States,* 315 U.S. 60, 70, 62 S.Ct. 457, 464, 86 L.Ed. 680 (1942); *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); *Aetna Ins. Co. v. Kennedy,* 301 U.S. 389, 393, 57 S.Ct. 809, 811–12, 81 L.Ed. 1177 (1937).

counsel—may leave a judge entirely unaware of the facts essential to an informed decision that an accused has executed a valid waiver of his right to counsel.

Id. at 723–24, 68 S.Ct. at 323. [Footnotes omitted].

Concededly the responsibility of a trial judge in determining whether a defendant has effectively waived his right to counsel at trial is distinguishable from that of government agents wishing to interrogate a suspect represented by an attorney. But while the specific inquiry to be made in each case varies, the underlying purpose remains the same: *Johnson v. Zerbst* "applies equally" to both situations. *Brewer v. Williams, supra,* 430 U.S. at 404, 97 S.Ct. at 1242. Quite simply, a person cannot "knowingly and intelligently" waive a right if he lacks some rudimentary understanding of how he might be affected by relinquishing that right. At a trial, with all its procedural complexities, detailed explanation by the judge may be necessary to assure that the defendant has this rudimentary understanding. Less explaining may be required in the interrogation context, but surely more is necessary than the bare statement that "you have the right to an attorney".[3] A layman, however intelligent or well educated,[4] should not be expected to understand *how* a lawyer can assist him in the face of criminal charges. This basic principle lies at the heart of the cases construing the right to counsel.

The Sixth Amendment "embodies a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel". *Johnson v. Zerbst, supra,* 304 U.S. at 462–63, 58 S.Ct. at 1022. A defendant's need for a lawyer was concisely explained by Mr. Justice Sutherland in *Powell v. Alabama,* 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932):

The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he may have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true is it of the ignorant and illiterate, or those of feeble intellect.

The need for counsel at critical stages prior to trial is also well recognized in our jurisprudence. In refusing to "exalt form over substance", the Supreme Court has noted that the panoply of rights traditionally associated with the trial itself would be meaningless if a defendant's fate had already been determined by unchecked pretrial police practices:

---

**3.** How much more would depend on the circumstances of each case. Here the panel majority suggested that the agent should have exercised "the slight additional precaution of asking Mary Brown whether she desired to confer with *her* attorney before answering any questions". 551 F.2d at 643 (emphasis added). Perhaps uncounseled defendants would sufficiently understand the consequences of waiver if the interrogating agent were to state, as did the trial judge in *Faretta,* that it is "a mistake

not to accept the assistance of counsel". 422 U.S. at 835, 95 S.Ct. at 2541.

**4.** Consider *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), in which the defendant was himself an attorney: "His professional experience may be a factor in determining whether he actually waived his right to the assistance of counsel. [*Johnson v. Zerbst*]. But it is by no means conclusive". Id. at 70, 62 S.Ct. at 465.

The rule sought by the State here, however, would make the trial no more than an appeal from the interrogation; and the "right to use counsel at the formal trial [would be] a very hollow thing [if] for all practical purposes, the conviction is already assured by pretrial examination".

*Escobedo v. Illinois, supra,* 378 U.S. at 487–88, 84 S.Ct. at 1763.[5]

In *Lee v. United States,* 322 F.2d 770, 778 (5th Cir. 1963), this Court stated: "No one can dispute the truth of Professor Chafee's statement, 'A person accused of crime needs a lawyer right after his arrest probably more than at any other time.' "[6] Because a defendant's need for the assistance of counsel at critical stages prior to trial is in many ways as great as his need at trial, it makes sense to require a comparable waiver in both situations.[7] At least three cases have so held. In *United States v. Satterfield,* 417 F.Supp. 293, 296 (S.D.N.Y.1976), aff'd, 558 F.2d 655 (2d Cir. 1976), Judge Knapp held that, under *Massiah,* "after indictment the advice of counsel can be waived only after such warnings and explanations as would justify a court in permitting a defendant to proceed *pro se* at trial". This holding was extended to cover the pre-indictment questioning of a suspect who had retained counsel in *United States v. Miller,* 432 F.Supp. 382, 387–88 (E.D.N.Y.1977). In *United States ex rel. Lopez v. Zelker,* 344 F.Supp. 1050, 1054 (S.D.N.Y.), aff'd without

opinion, 465 F.2d 1405 (2d Cir.), cert. denied, 409 U.S. 1049, 93 S.Ct. 529, 34 L.Ed.2d 501 (1972), Judge Frankel explained a similar holding as follows:

[A]ssuming that the *Massiah* protection may be waived . . .

the casual and relatively perfunctory 'invitation to a *Miranda*-style waiver is insufficient. When an indictment has come down, riveting tightly the critical right to counsel, a waiver of that right requires the clearest and most explicit explanation and understanding of what is being given up. There is no longer the possibility—and the law enforcement justification—that a mere suspect may win his freedom on the spot by "clearing up a few things." Cf. *United States v. Drummond,* 354 F.2d 132, 144 (2d Cir. 1965) (en banc), cert. denied, 384 U.S. 1013, 86 S.Ct. 1968, 16 L.Ed.2d 1031 (1966), rehearing denied, 385 U.S. 892, 87 S.Ct. 24, 17 L.Ed.2d 126 (1966). Even in the courtroom, where an impartial judicial officer is presumably impelled by no purpose but fairness, that officer must counsel with care and advise against the likely folly of a layman's proceeding without the aid of a lawyer. *Von Moltke v. Gillies,* 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948); *United States v. Spencer,* 439 F.2d 1047 (2d Cir. 1971); *United States v. Plattner,* 330 F.2d 271, 276 (2d Cir. 1964). See *United States v. Duty,* 447 F.2d 449, 451

---

**5.** A footnote at this point in the Court's opinion reads: "The Soviet criminal code does not permit a lawyer to be present during the investigation. The Soviet trial has thus been aptly described as 'an appeal from the pretrial investigation'. Feifer, Justice in Moscow (1964), 86". Justice Harlan's dissent in *Mapp v. Ohio* emphasized this point. Without the protections flowing from adequate warnings and the right to counsel, he observed, "all the careful safeguards erected around the giving of testimony, whether by an accused or any other witness, would become empty formalities in a procedure where the most compelling possible evidence of guilt, a confession, would have already been obtained at the unsupervised pleasure of the police". *Mapp v. Ohio,* 367 U.S. 643, 685, 81 S.Ct. 1684, 1707, 6 L.Ed.2d 1081 (1961) (Harlan, J., dissenting), quoted with approval in *Miranda, supra,* 384 U.S. at 466, 86 S.Ct. at 1624.

**6.** Chafee, 2 Documents on Fundamental Human Rights, 541 (1951–1952).

**7.** The validity of this proposition is underscored where, as here, the defendant is represented by retained or appointed counsel during the pretrial stages. In a case adopting the general approach of the instant majority, the Seventh Circuit recognized "that there is a higher standard imposed to show waiver of the presence of counsel once counsel has been appointed than before . . ." *United States v. Springer,* 460 F.2d 1344, 1352 (7th Cir. 1972), cert. denied, 409 U.S. 873, 93 S.Ct. 205, 34 L.Ed.2d 125 (1973). This Court has likewise expressed the view that whether an accused has secured counsel at the time of interrogation is relevant to the question of waiver. *United States v. Patman,* 557 F.2d 1181, 1182 n.1 (5th Cir. 1977).

(2d Cir. 1971). We cannot settle for less where the waiver has been proposed by a law enforcement officer whose goals are clearly hostile to the interests of the already indicted person in custody.[8]

In citing these three cases, I do not mean to imply that they reflect the settled law on this question. A review of the relevant cases reveals great confusion among and within the Circuits. Some cases have suggested a *per se* rule forbidding police interrogation in the absence of counsel once *Massiah* has attached and the accused is represented by counsel.[9] The panel majority in the instant case did not adopt a *per se* rule, holding instead that waiver of the presence of counsel was possible but had not been established with respect to Mary Brown. 551 F.2d at 643. The majority of cases have also rejected the *per se* rule, but have usually found waiver where the defendant read and had the mental capacity

to understand the *Miranda* warnings.[10] I would distinguish those cases which refused to apply a *per se* rule where the defendant had initiated the contact with the police and had voluntarily made a confession.[11]

The problem in working with these earlier cases is that the Supreme Court in *Brewer v. Williams, supra,* has put a fresh gloss upon the requirements for waiver of the right to counsel in the pretrial stages. I assume that the majority deems *Brewer* as of no moment insofar as this case is concerned. It is true that in *Brewer,* the Court expressly declined to hold that the right to counsel *could not* be waived in the circumstances present, without notice to counsel. Id. at 405, 97 S.Ct. at 1243. But the impact of *Brewer* is in the Court's critical and realistic assessment of the facts which were urged as establishing waiver. The Court's analysis casts doubt on the proposition that

---

8. The Second Circuit considers its affirmance without opinion in *Lopez* as of no precedential value. In a subsequent case, the Second Circuit limited *Lopez* to its facts, noting that the defendant there had been asked to execute a waiver without having been informed that a first degree murder indictment against him was outstanding. *United States v. Diggs,* 497 F.2d 391, 393 n.3 (2d Cir. 1974).

9. *United States v. Durham,* 475 F.2d 208 (7th Cir. 1973); *United States ex rel. O'Connor v. New Jersey,* 405 F.2d 632 (3d Cir. 1969), cert. denied sub. nom. *Yeager v. O'Connor,* 395 U.S. 923, 89 S.Ct. 1770, 23 L.Ed.2d 240; *United States v. Smith,* 379 F.2d 628, 633 (7th Cir. 1967), cert. denied, 389 U.S. 993, 88 S.Ct. 491, 19 L.Ed.2d 486; *Hancock v. White,* 378 F.2d 479 (1st Cir. 1967). These cases are based primarily on the Supreme Court's summary reversal, on the sole authority of *Massiah,* of the Ohio Supreme Court in *McLeod v. Ohio,* 381 U.S. 356, 85 S.Ct. 1556, 14 L.Ed.2d 682 (1965).

The New York Court of Appeals has also adopted a *per se* rule based on state constitutional grounds. *People v. Hobson,* 39 N.Y.2d 479, 384 N.Y.S.2d 419, 348 N.E.2d 894 (1976). The rationale of the New York rule is relevant in determining the federal standard:

The rule that once a lawyer has entered the proceedings in connection with the charges under investigation, a person in custody may validly waive the assistance of counsel only in the presence of a lawyer breathes life into the requirement that a waiver of a constitutional right must be competent, intelligent and voluntary. [Citations omitted.] Indeed,

it may be said that a right too easily waived is no right at all. 384 N.Y.S.2d at 422, 348 N.E.2d at 898.

10. See, e. g., *United States v. Hall,* 523 F.2d 665, 688 n.4 (2d Cir. 1975); *United States v. Crook,* 502 F.2d 1378 (3d Cir. 1974); *United States v. Mandley,* 502 F.2d 1103 (9th Cir. 1974); *United States v. Benson,* 495 F.2d 475 (5th Cir. 1974), cert. denied, 419 U.S. 1035, 95 S.Ct. 519, 42 L.Ed.2d 310; *Moore v. Wolff,* 495 F.2d 35 (8th Cir. 1974); *United States v. Cobbs,* 481 F.2d 196 (3d Cir. 1973), cert. denied, 414 U.S. 980, 94 S.Ct. 298, 38 L.Ed.2d 224; *United States v. Vasquez,* 476 F.2d 730 (5th Cir. 1973), cert. denied, 414 U.S. 836, 94 S.Ct. 181, 38 L.Ed.2d 72; *United States v. Springer,* 460 F.2d 1344 (7th Cir. 1972), cert. denied, 409 U.S. 873, 93 S.Ct. 205, 34 L.Ed.2d 125; *Wilson v. United States,* 398 F.2d 331 (5th Cir. 1968), cert. denied, 393 U.S. 1069, 89 S.Ct. 727, 21 L.Ed.2d 712 (1969); *Coughlan v. United States,* 391 F.2d 371 (9th Cir.), cert. denied, 393 U.S. 870, 89 S.Ct. 159, 21 L.Ed.2d 139.

11. See, e. g., *United States v. Crisp,* 435 F.2d 354 (7th Cir. 1970), cert. denied, 402 U.S. 947, 91 S.Ct. 1640, 29 L.Ed.2d 116 (1971); *United States v. Deloy,* 421 F.2d 900 (5th Cir. 1970); *United States v. Venere,* 416 F.2d 144 (5th Cir. 1969); *Arrington v. Maxwell,* 409 F.2d 849 (6th Cir. 1969), cert. denied, 396 U.S. 944, 90 S.Ct. 381, 24 L.Ed.2d 245; *United States v. Hale,* 397 F.2d 427 (7th Cir. 1968), cert. denied, 393 U.S. 1067, 89 S.Ct. 723, 21 L.Ed.2d 710 (1969); *Davidson v. United States,* 371 F.2d 994 (10th Cir. 1966).

**246**

waiver of the right to counsel, under the facts of the instant case, can be established by a mere recitation of the *Miranda* warnings.

Defendant Williams, a recent escape from a mental hospital, had turned himself in to Davenport police in connection with the murder of a child in Des Moines. In arranging to transport Williams back to Des Moines, the Des Moines police promised Williams' attorneys that they would not question Williams during the drive between cities. Williams was arraigned before a judge in Davenport who read him his *Miranda* rights. Before leaving Davenport, a Des Moines police official again read Williams his *Miranda* rights and his Davenport attorney instructed him not to make any statements until he had an opportunity to consult with his Des Moines attorney. Williams himself repeatedly told the police that he would tell them the "whole story" as soon as he spoke to his attorney in Des Moines. In the car en route to Des Moines—and in the absence of counsel—a detective from the Des Moines police successfully used psychological tactics to elicit incriminating information from Williams. The Supreme Court held that these incriminating statements had been improperly admitted against Williams in his state trial because the State had failed to sustain its burden of proving that Williams waived his right to the presence of counsel.

In explaining its decision, the Court noted:

> It is true that Williams had been informed of and appeared to understand his right to counsel. But waiver requires not merely comprehension but relinquishment, and Williams' consistent reliance upon advice of counsel in dealing with the authorities refutes any suggestion that he waived that right . . . Wil-

liams knew of that agreement [that the police would not question him in the car] and, particularly in view of his consistent reliance on counsel, there is no basis for concluding that he disavowed it.

430 U.S. at 404, 97 S.Ct. at 1242. The dissenters in *Brewer* vigorously argued that if Williams understood his right to counsel, he must have intended to waive that right by making incriminatory statements in the absence of counsel. As Justice White put it:

> That respondent knew of his right not to say anything to the officers without advice and presence of counsel is established on this record to a moral certainty . . .
> The fact that respondent consulted with counsel on the question whether he should talk to the police in counsel's absence makes his later decision to talk in counsel's absence *better* informed and, if anything, more intelligent.

430 U.S. at 433, 97 S.Ct. at 1257–58 (White, J., dissenting).[12]

*Brewer* thus divided the government's burden of proof on the waiver issue into two distinct parts: (1) proof that the defendant *understood* his right to counsel, and (2) proof that he affirmatively *relinquished* the right. The Court carefully documented how Williams' conduct revealed his understanding of the right; the real problem in the case was the lack of evidence of relinquishment. The rationale of *Brewer* makes no sense, however, unless the case is read as establishing proof of understanding as a predicate to a finding of relinquishment. Surely, if a clear understanding of the right to counsel is insufficient to establish waiver absent some "affirmative indication" of relinquishment, then a relinquishment made without comprehension of the right is equally insufficient.

---

12. Pre-*Brewer* cases in this Circuit seem to echo the view expressed by Justice White. See, e. g., *Biddy v. Diamond*, 516 F.2d 118, 122 (5th Cir. 1975) ("It is clear that when a person knows her rights, and has even exercised the right to counsel, talking with counsel, later voluntary admissions can constitute waiver of the rights to counsel and to remain silent.");

*United States v. Brown*, 459 F.2d 319 (5th Cir. 1971), cert. denied, 409 U.S. 864, 93 S.Ct. 155, 34 L.Ed.2d 111 (1972). While I do not assert that *Brewer necessarily* overruled these cases, their apparent inconsistency with *Brewer* underscores the need for a thorough reexamination of the underpinnings of our Sixth Amendment waiver holdings.

### B. Did Mary Brown Understand the Right She "Relinquished"?

Essentially, this case is the mirror image of *Brewer v. Williams.* Whereas in *Brewer* "there was no evidence of a knowing and voluntary waiver of the right to have counsel present beyond the fact that Williams ultimately confessed", 430 U.S. at 412, 97 S.Ct. at 1246 (Powell, J., concurring), in this case we have clear prima facie evidence of relinquishment: a signed form stating that "I do not want a lawyer at this time". But in *Brewer*, "[t]he evidence [was] uncontradicted that Williams had abundant knowledge of his right to have counsel present", 430 U.S. at 418, 97 S.Ct. at 1249 (Burger, C. J., dissenting); here, the record is devoid of evidence that Mary Brown understood her right to counsel. If anything, the evidence suggests exactly the opposite.

The majority's recitation of the facts which allegedly established that Mary Brown understood her rights reveals a non sequitur:

> Mary Brown had a college education having attended Florida Memorial College in St. Augustine, Florida, for four years. She worked as an elementary school teacher for thirteen years. In the days before she made the statement she had been advised of her rights by the Sears security guard and the Miami City police.

The F.B.I.'s *Miranda* warnings were read to her by the agent and given to her to read and sign.

Majority opinion at 239. As did the district court, the majority thus assumes that comprehension is established whenever the government can prove that the standard rights form was read to an intelligent, educated person. Available empirical data indicates that such a general presumption of comprehension is unwarranted.[13] As I have sought to demonstrate above, the average person lacks the expertise to understand why a lawyer may be able to assist him in the face of criminal charges.

The specific facts of this case also argue strongly against the majority's presumption. This record does not indicate that Mary Brown conferred with her appointed attorney prior to August 14, 1974, the date of her preliminary hearing on the state charges. A conference with her attorney on that date was prevented at the eleventh hour by the F.B.I. agents waiting at the door of the courtroom. She was deprived in this manner of the benefit of any advice or words of caution that her attorney might have imparted at that point.[14] This is in sharp contrast with defendant Williams, in *Brewer*, whose understanding of his right to counsel was reinforced by numerous pre-interrogation consultations with two law-

---

**13.** As Chief Judge Bazelon noted, dissenting in *United States v. Frazier,* 155 U.S.App.D.C. 135, 144, 476 F.2d 891, 900 (1973) (en banc), "capacity to understand the warnings does not by any means guarantee that they will actually be understood". He pointed out that "[t]he available empirical evidence clearly indicates that many, if not most, defendants do not understand the [*Miranda*] warnings, even where the defendants are intelligent and well educated", citing Medalie, Zeitz & Alexander, Custodial Interrogation in Our Nation's Capital: The Attempt to Implement Miranda, 66 Mich.L.Rev. 1347 (1969); Zeitz, Medalie & Alexander, Anomie, Powerlessness and Police Interrogation, 60 J.Crim.L.C. & P.S. 314 (1969); Note, Interrogations in New Haven: The Impact of Miranda, 76 Yale L.J. 1519 (1967). See also Leiken, Police Interrogation in Colorado: The Implementation of Miranda, 47 Denver L.J. 1, 15–16, 33 (1970).

**14.** In this sense, the attorney could serve a role analogous to that of the judge in cases where the right to counsel at trial is waived; he could apprise the defendant of those considerations which would make an eventual waiver "knowing and intelligent". See *Coughlan v. United States,* 391 F.2d 371, 374–5 (9th Cir. 1968) (Hamley, J., dissenting). In a similar context, the New York Court of Appeals noted that the *Miranda* warnings "often provide only a feeble opportunity to obtain a lawyer, because the suspect or accused is required to determine his need, unadvised by anyone who has his interests at heart". *People v. Hobson,* 39 N.Y.2d 479, 384 N.Y.S.2d 419, 423, 348 N.E.2d 894, 899 (1976). Prior consultation with retained counsel has been considered an important factor in some findings of waiver. See *United States v. Barone,* 467 F.2d 247 (2d Cir. 1972). In *United States v. Hale,* 562 F.2d 336, 337–38 (5th Cir. 1977), this Court upheld a finding of waiver, noting that "[t]he defendant, through attorney Whinnery, voluntarily initiated the interview after full opportunity to discuss his rights and options with Whinnery".

yers. Also, Mrs. Brown's conduct indicates that she did not understand the possible consequences of her interrogation and that she was not thinking clearly: she told one of the most irrational and easily disproved lies imaginable, that her son, Edwin Brown, was not her son.

Adding to the obstacles to a finding of comprehension in this case is the fact that the F.B.I.'s *Miranda* warnings are tailored for the suspect who has not yet retained counsel. When Mary Brown was interrogated by the F.B.I., she had a lawyer. Yet she signed a form which read, in part:

> You have the right to talk to *a* lawyer for advice before we ask you any questions
>
> . . .
>
> If you cannot afford a lawyer, one *will be appointed* for you . . . .
>
> If you decide to answer questions now without *a* lawyer present . . . .
>
> I do not want *a* lawyer at this time. [Emphasis added].

The majority brushes aside this obvious point of confusion with the statement: "Under the facts of this case the *Miranda* warnings were sufficient, when dealing with a well-educated teacher, to make clear that 'an attorney' includes the state public defender already appointed". Page 239. To the contrary, the majority is unreasonable when it requires a lay person, albeit an intelligent one, to read into the warnings what they are *meant* to say, not what they actually say. Judge (now Justice) Stevens emphasized this point in his dissent from the holding in *United States v. Springer,* 460 F.2d 1344, 1355 n.3 (7th Cir. 1972):

> The fact that the agents had defendant sign a standard waiver of rights form on May 18 *after* counsel had been appointed provides affirmative evidence that he did not fully grasp the significance of the procedural situation in which he found himself. That form recited that a lawyer "*will be appointed* for you if you wish . . . ."

Rather than the "clear and unequivocal waiver" found by the majority, any waiver in this case can only be implied.[15] Because the record is silent as to whether Mary Brown actually read into the *Miranda* warnings what the majority merely assumes she did, the majority opinion runs contrary to a basic tenet of constitutional waiver: "Presuming waiver from a silent record is impermissible". *Carnley v. Cochran, supra,* 369 U.S. at 516, 82 S.Ct. at 890.

Under these circumstances, I think the government should at least have been required to produce the type of evidence suggested by the Third Circuit in *United States v. Cobbs,* 481 F.2d 196, 200 (3d Cir. 1973): "in cases where this issue is important, the Government's evidence in support of the voluntariness of the waiver should also include evidence to the effect that the accused, prior to making a statement, specifically acknowledged that he was represented by an attorney". It was for precisely this reason that the panel in this case required "the slight additional precaution of asking Mary Brown whether she desired to confer with *her* attorney before answering any questions". 551 F.2d at 643 (emphasis added).

I find it difficult to accept that the ritualistic reading and signing of these printed waiver forms adequately apprises an accused of the importance of the rights he is waiving. The signing of a form which does not even apply to the situation at hand is certainly a hollow ritual. Yet, as Justice Black cautioned in *Von Moltke v. Gillies, supra,* 332 U.S. at 723, 68 S.Ct. at 323:

> The hollow compliance with the mandate of the Constitution at a stage so important as arraignment might be enough in itself to convince one like petitioner, who previously had never set foot in an American courtroom, that a waiver of this right to counsel was no great loss—just another legalistic formality.

---

**15.** See Judge Hamley's dissent in *Coughlan v. United States,* 391 F.2d 371, 374 n. 4 (9th Cir. 1968).

C. *The Misconduct of the Government's Agents: Unethical or Unconstitutional?*

The validity of the waiver in this case must also be assessed against the conduct of the F.B.I. Agents who intercepted Mrs. Brown and the federal prosecutor who used the fruits of the interrogation.

The Code of Professional Responsibility, promulgated by the American Bar Association, proscribes the government's conduct in this case:

> [Disciplinary Rule] 7–104. Communicating with One of Adverse Interest.
> (A) During the course of his representation of a client a lawyer shall not: (1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.

Fourteen years ago, in *Lee v. United States, supra,* 322 F.2d at 777, this Court recognized that "legal ethics forbid a United States Attorney *or a Government agent* to by-pass the lawyer of a defendant fortunate enough to have the means to engage counsel". (emphasis added). Again, in *Clifton v. United States,* 341 F.2d 649, 652

n. 9 (5th Cir. 1965), we condemned the government's interrogation of a represented defendant in the absence of counsel, noting that "once the process has shifted from investigation to accusation the well-recognized practice in civil litigation serves as an appropriate analogy". While this Court in *Wilson v. United States,* 398 F.2d 331, 333 (5th Cir. 1968), found no constitutional violation in the admission of incriminating statements made to F.B.I. agents "out of the presence of appellants' counsel, the agents knowing that counsel had been appointed for appellants", nevertheless we carefully recorded our condemnation of the practice: "this Court agrees with the dissenting opinion [in *Coughlan v. United States, supra*] as to the impropriety of Government interrogation of a person in custody pending trial, in the absence of counsel which the interrogator knew had been appointed to represent the defendant".[16]

Virtually every court confronted with conduct similar to that of the F.B.I. agents in this case has condemned it as unethical.[17] Occasionally the government itself has disclaimed the practice as violative of its own policy.[18] In one case, Judge (now Chief Justice) Burger strongly condemned the practice and added, "[w]e assume that the episode will not arise again in the future". *Mathies v. United States,* 126 U.S.App.D.C. 98, 102, 374 F.2d 312, 316 (1967).

**16.** Although the fact of custody is relevant in terms of *Miranda,* it has no bearing on either the accused's right to counsel or the government's ethical obligations. Thus, the impropriety we condemned in *Wilson* is present here even though Mary Brown was not in custody at the time she was interrogated. I am at a loss to explain why the majority in this case limits its condemnation of the F.B.I. agents' conduct to the *location,* as opposed to the nature, of the interview. Intercepting Mrs. Brown at the doors of the courtroom within feet of her attorney certainly aggravated the offense, but the gravamen of the ethical violation was the agents' indifference to whether Mrs. Brown was represented by counsel, a fact assumed by the agents.

**17.** See, e. g., *United States v. Crook,* 502 F.2d 1378, 1380 (3d Cir. 1974); *United States v. Cobbs,* 481 F.2d 196, 200 (3d Cir. 1973), cert. denied, 414 U.S. 980, 94 S.Ct. 298, 38 L.Ed.2d 224; *United States v. Durham,* 475 F.2d 208,

211 n. 2 (7th Cir. 1973) (Opinion by Swygert, C. J.); *United States v. Thomas,* 474 F.2d 110 (10th Cir. 1973), cert. denied, 412 U.S. 932, 93 S.Ct. 2758, 37 L.Ed.2d 160; *United States v. Springer,* 460 F.2d 1344, 1353 (7th Cir. 1972), cert. denied, 409 U.S. 873, 93 S.Ct. 205, 34 L.Ed.2d 125; *United States v. Four Star,* 428 F.2d 1406, 1407 (9th Cir. 1970), cert. denied, 400 U.S. 947, 91 S.Ct. 255, 27 L.Ed.2d 253; *United States v. Wedra,* 343 F.Supp. 1183 (S.D. N.Y.1972).

Indispensable reading in this area includes Judge Levin's dissenting opinion in *People v. Patterson,* 39 Mich.App. 467, 198 N.W.2d 175 (Ct.App.1972), and Broeder, *Wong Sun v. United States*: A Study in Faith and Hope, 42 Neb.L.Rev. 483, 599–604 (1962–63).

**18.** *Ricks v. United States,* 118 U.S.App.D.C. 216, 222, 334 F.2d 964, 970 n. 18 (D.C.Cir.1964); *Lee v. United States,* 322 F.2d 770, 777 (5th Cir. 1963).

But arise again it does—repeatedly and flagrantly. And with each new instance of this abuse, the doctrine that it is an ethical violation without constitutional dimension becomes more difficult to defend:

I see little point in well-intentioned utterances denouncing in-custody interrogation of an accused person known to be represented by counsel without affording counsel an opportunity to be present, or in condemning prosecuting attorneys who take part in such interrogation in violation of professional ethics and then allowing the government to become the beneficiary of the condemned conduct. The only effective way to terminate this unfair and at times unethical practice is to prohibit the government from using its illicit fruits. *United States v. Wedra,* 343 F.Supp. 1183, 1188–89 (S.D.N.Y.1972).[19]

The policy behind the ethical proscription addresses the integrity of the adversary system.[20] Similar considerations underlie the Sixth Amendment right to counsel, which "is indispensable to the fair administration of our adversary system of criminal justice". *Brewer v. Williams, supra,* 430 U.S. at 398, 97 S.Ct. at 1239. As Justice Stevens explained, concurring in *Brewer:*

Under any analysis, this was a critical stage of the proceeding in which the participation of an independent professional was of vital importance to the accused and to society. At this stage—as in countless others in which the law profoundly affects the life of the individual—the lawyer is the essential medium through which the demands and commitments of the sovereign are communicated to the citizen. Id. at 415, 97 S.Ct. at 1247–48.[21]

Because I do not favor a rule that all statements made in the absence of counsel are inadmissible, see 551 F.2d at 643, I would not propose that every violation of DR 7–104(A)(1) deprives an accused of his right to counsel. The government's conduct in each case must be considered against the policies embodied in the disciplinary rule and the Sixth Amendment. Here the acts of the F.B.I. agents suggest a race to reach Mary Brown before she could meet her attorney.[22] If anything flies in the face of the adversary system, this conduct certainly does. Thus, I would hold that the

19. "One can visualize the legendary Dr. Watson turning to Sherlock Holmes and opining, 'Holmes, the [government] cannot do this to [Mrs. Brown].' Whereupon, Holmes, between puffs on his Wellington, would respond, 'My dear Watson, they have done it. What you mean, precisely, is that they cannot get away with it.' " With apologies to Sir Arthur Conan Doyle and the Court of Specials Appeals of Maryland, *Herilla v. Mayor and City Council of Baltimore,* 37 Md.App. 481, 494, 378 A.2d 162, 170 (1977).

20. The Ethical Consideration (EC 7–18) supporting DR 7–104(A)(1) states that "[t]he legal system in its broadest sense functions best when persons in need of legal advice or assistance are represented by their own counsel".

21. In his concurring opinion, Justice Stevens emphasized that the Des Moines police had promised Williams' attorney that they would not question Williams during the trip to Des Moines. The promise in *Brewer* was an exacerbating circumstance, however, not a distinguishing one. Under the ethical rules, such a promise can be implied where an accused is represented by counsel. Moreover, Justice Stevens, as a Circuit Judge, expressed a similar view in a case where there was no express promise to refrain from interrogation. Dissenting in *United States v. Springer,* 460 F.2d 1344, 1354–55 (7th Cir. 1972), he equated the ethical violation with a denial of Fifth Amendment due process.

22. Both agents denied that this was their purpose in timing the interception of Mary Brown as they did. Tr. 70–71, 82–83. Nevertheless, the agents assumed that Mrs. Brown would be represented by counsel at the preliminary hearing on state charges that day and they planned the interception with reckless disregard for the consequences. Agent Hexter's testimony at the suppression hearing is illuminating:

Q. You got there and interviewed them prior to the hearing in order that you could speak to them before they had an opportunity on that day to speak to their previously court-appointed attorney; isn't that correct, sir?

A. That's correct.

Q. And that was your purpose, sir, is that correct?

A. No, sir. I just wanted to talk to them. *I didn't care whether they had spoken to their attorney or not.* (Tr. 82–83; emphasis added).

interrogation of Mrs. Brown was *both* unethical and unconstitutional.

### III.  CONCLUSION

While one may hope that this court will in the future limit today's holding to the facts of this case, it nevertheless reflects a doctrine alarmingly at odds with Sixth Amendment purposes.  People in serious trouble with the law and desperately in need of a lawyer's help may go uncounseled as a result of the perfunctory gesture which the majority has deemed a constitutional waiver.

Assuming, however, that recitation of the "right to an attorney" does not evoke in the mind of a layman the same associations and conclusions as in the minds of lawyers and judges, it is unrealistic to conclude, as the majority does, that a layman comprehends the consequences of signing a form which states "I do not want a lawyer at this time".  Such a conclusion puts a premium on ignorance.  As a practical matter, many waivers based on nothing more than the bare *Miranda* warnings will be neither knowing nor intelligent.

In reaching a conclusion similar to that of the majority, the New Jersey Supreme Court stated a premise which, although unarticulated by this Court today, seems to underlie its holding: "It is consonant with good morals, and the Constitution, to exploit a criminal's ignorance or stupidity in the detectional process".  *State v. McKnight,* 52 N.J. 35, 243 A.2d 240, 250 (1968).  I cannot accept this premise where the right to counsel has attached.  As the Supreme Court stated long ago, "[t]he purpose of the constitutional guarantee of a right to counsel is to protect an accused from conviction resulting from his own ignorance of his legal and constitutional rights".  *Johnson v. Zerbst, supra,* 304 U.S. at 465, 58 S.Ct. at 1023.

In short, today's holding reduces the standard for a knowing and intelligent relinquishment of a fundamental constitutional right to a wooden ritual.  The foreseeable result is that the right to counsel, so solemnly exalted in the chambers of justice, will ring hollow in the chambers of the interrogator.

I respectfully dissent.